J-A26036-18

2018 PA Super 323

| | | |
|---|---|---|
| STEVEN MADER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DUQUESNE LIGHT COMPANY | : | |
| | : | |
| Appellant | : | No. 609 WDA 2018 |

Appeal from the Order April 17, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD 13-6249

BEFORE: BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY MURRAY, J.:                    FILED NOVEMBER 30, 2018

Duquesne Light Company (Appellant) appeals from the order granting the post-trial motion of Steven Mader (Mader) seeking a new trial as to damages. After careful consideration, we reverse in part, affirm in part, and remand to the trial court.

The trial court detailed the relevant facts and procedural history of this case as follows:

Steven Mader, a fifty-four masonry contractor, worked on a two week project involving repairs to the chimney, fireplace and front stoop of an existing home in the North Hills of Pittsburgh. On September 21, 2012, after the project had been completed and Mr. Mader's crew was beginning to clean up, the customer asked Mr. Mader if he could check the gutters to see if any mortar from the chimney repair had been washed into them during a recent rainstorm. Mr. Mader used a sixteen foot aluminum extension ladder to check the gutters and then, carrying the ladder perpendicular to the ground, began walking from the home to place the ladder on his truck. Underground electrical service was provided to every home in the neighborhood, and Mr. Mader had not noticed that there were electrical power lines only eleven feet away from his customer's home.

With only air insulating this 13,000 volt electrical transmission line, the top of the ladder being carried by Mr. Mader made contact with it. The electricity ran down the ladder and through his body, causing him to immediately lose consciousness and fall to the ground. He regained consciousness and was taken to the hospital by ambulance with severe burn injuries to both of his arms (where he had been holding the ladder) and his feet (where the electricity exited his body). Mr. Mader . . . ultimately survived what could have been a fatal electrocution.

The next day, surgery was performed on Mr. Mader's feet and right arm at the hospital. Both of his feet were burned from the toes to the mid-forefoot with the burn reaching the bone. Dead or dying tissue was excised and then cadaver grafts placed on Mr. Mader's feet. Tissue was excised from his right arm, which also was burned to the bone. To relieve the swelling of Mr. Mader's right arm, the hospital opened the subcutaneous layers of skin (which is known as a fasciotomy) and performed a cadaver graft. On September 29 he had another surgery at the hospital. The fasciotomy of Mr. Mader's right arm was closed and tissue was excised from his left hand and wrist. On October 1 both his feet were amputated in the middle of the arch, which is known as a transmetatarsal amputation. On October 3 Mr. Mader returned to the hospital operating room for irrigation of the amputation wounds. On October 10 he had an additional surgery to excise tissue and place a wound vac in his right forearm. Mr. Mader's final surgery at the hospital was on October 25. Tissue was debrided around his elbow and he also received an autograft, which consisted of removal of healthy skin from [his] upper thighs that was used to replace skin he had lost. He then was moved out of the hospital to a skilled nursing facility, where he stayed for the next month and a half.

While in the hospital, Mr. Mader kept his masonry contracting business operating with his two employees able to do the jobs scheduled before September 21 without him on the sites. At the time of the year when Mr. Mader moved to the skilled nursing facility, his past practice was to shift the business primarily to chimney cleaning. Mr. Mader received calls on his cell phone for chimney cleaning, and his two employees came to the nursing facility daily to receive chimney cleaning assignments. While Mr. Mader was confined to a wheelchair when he left the nursing facility, he now is able to walk with his gait altered to

accommodate the amputation of the balls of his feet. He did, however, close his business approximately two years after his injury because he could no longer participate in the physical process of bricklaying and his customers would not pay his prices without him doing the work.

In April of 2013, Mr. Mader sued [Appellant], the owner of the 13,000 volt electric power line he contacted with his ladder. Mr. Mader averred [Appellant]'s negligence in maintaining the electric lines too close to the ground, caused his injuries. Mr. Mader also averred [Appellant] acted with reckless indifference to his safety and therefore should pay punitive damages. The dispute was resolved in a jury trial[.] . . . At the conclusion of the trial, the jury returned a verdict allocating [Appellant] sixty percent negligent and Mr. Mader forty percent negligent for his injuries. The jury awarded Mr. Mader $500,000 in compensatory damages and found [Appellant]'s conduct did not warrant punitive damages.

Consistent with the Pennsylvania Suggested Jury Instructions Mr. Mader requested, [the trial court] instructed the jury that he is entitled to compensation for past medical expenses, past lost earnings, future lost earning capacity, past and future pain and suffering, embarrassment and humiliation, loss of ability to enjoy the pleasures of life and disfigurement. See Exhibit 13 filed 3/20/2018, pp. 68-74. However, the written December 8, 2017 "Jury Verdict" provides this . . . itemization of Mr. Mader's damages:

| | |
|---|---|
| (a) Past medical expenses | $ 444,525.56 |
| (b) Future medical expenses | $ 55,474.44_ |
| (c) Past lost earnings | _____ |
| (d) Future lost earning capacity | _____ |
| (e) Past, present, and future pain and suffering, embarrassment and humiliation and loss of enjoyment of life | _____ |
| (f) Disfigurement | _____ |
| Total | $ 500,000.00 |

Mr. Mader timely filed a motion for post-trial relief that requested a new trial limited to the issue of damages. [Appellant]'s responsive brief acknowledges that Mr. Mader is entitled to a new trial on damages for past pain and suffering. But, it denies that [he] is entitled to a new trial on damages for future pain and suffering or for either past or future lost earnings. [The trial court] granted Mr. Mader's request for a new trial as to all damages submitted to the jury (i.e., past medical expenses, future medical expenses, past lost earnings, future lost earning capacity, past, present and future pain and suffering, embarrassment and humiliation, loss of enjoyment of life and disfigurement).

[Appellant] timely appealed from [the] order granting a new trial to the Superior Court of Pennsylvania. [Appellant] also timely filed a concise statement of errors complained of on appeal . . . pursuant to Pennsylvania Rule of Appellate Procedure [] 1925(a)[.]

Trial Court Opinion, 7/5/18, at 1-5 (footnotes omitted).

On appeal, Appellant presents the following issues for review:

1. Did the [t]rial [c]ourt abuse its discretion when it granted [] Mader a new trial on past medical expenses where the jury awarded the amount that the parties stipulated was the correct amount and the [t]rial [c]ourt instructed them to award, and where Mader waived his right to seek a new trial on this issue?

2. Did the [t]rial [c]ourt abuse its discretion when it granted Mader a new trial on future medical expenses where the jury's award was consistent with medical opinions and cost projections offered by [Appellant], and where Mader waived his right to seek a new trial on this issue?

3. Did the [t]rial [c]ourt abuse its discretion when it granted Mader a new trial on past lost earnings and future earnings capacity where the jury was presented with evidence and expert testimony on those issues that supported its verdict?

4. Did the [t]rial [c]ourt abuse its discretion when it granted Mader a new trial on pain and suffering, embarrassment, humiliation, and loss of enjoyment of life after the date that his

wounds healed, where the jury was presented with evidence and expert testimony on those issues that supported its verdict?

Appellant's Brief at 4-5.

At the outset, we note that "[t]he grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings." Harman ex rel. Harman v. Borah, 756 A.2d 1116, 1121 (Pa. 2000) (quoting Dornon v. McCarthy, 195 A.2d 520, 522 (Pa. 1963)). When analyzing a trial court's grant of a new trial, we are mindful that:

> "Trial courts have broad discretion to grant or deny a new trial … [and,] absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." [Harman,] 756 A.2d [at] 1121-1122 [] (internal quotations and citations omitted). In addition, "[t]he trial court's decision whether to limit a new trial to a particular issue or grant a new trial as to all issues will not be reversed absent an abuse of discretion." Chiaverini v. Sewickley Valley Hosp., [] 598 A.2d 1021, 1024 (Pa. Super. 1991).

Kindermann v. Cunningham, [] 110 A.3d 191, 193 (Pa. Super. 2015) (quoting Banohashim v. R.S. Enters., LLC, 77 A.3d 14, 22-23 (Pa. Super. 2013)). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." Harman, 756 A.2d at 1123. "A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding

of an abuse of discretion."  Id.  "Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." Id. (quotations and citations omitted).

Trial courts apply the following standard when determining whether to grant a new trial:

> A new trial should only be granted where the jury's verdict shocks one's sense of justice because it is so contrary to the evidence admitted at trial.  It is the province of the jury to assess the worth of all testimony presented.  The jury is free to believe all, some, or none of the witness testimony presented at trial.  However, the jury's verdict may be set aside if it is the product of passion, prejudice, partiality, or corruption, or if it is clear the verdict bears no reasonable relationship to the loss suffered by the plaintiff based on the uncontroverted evidence presented.  Kiser v. Schulte, [] 648 A.2d 1, 4 ([Pa.] 1994).

Carroll v. Avallone, 939 A.2d 872, 874 (Pa. 2007) (citations omitted). Importantly, "a new trial should not be granted due to a mere conflict in testimony or because the trial judge, on the same facts, would have arrived at a different conclusion."  Fischer v. Troiano, 768 A.2d 1126, 1129 (Pa. Super. 2001).  "Where the jury's verdict is supported by the evidence, . . . it will be upheld, and the order awarding a new trial will be reversed."  Burrell v. Philadelphia Elec. Co., [] 265 A.2d 516, 518 (Pa. 1970).

In its first issue, Appellant argues that the trial court abused its discretion in granting Mader a new trial on past medical expenses.  Appellant asserts that the decision to award a new trial on this category of damages was

improper because the jury awarded the amount of past medical expenses that the parties stipulated to and the trial court instructed the jury to award.[1]

The trial court explained its decision to award a new trial with respect to past medical expenses as follows:

> [Appellant] contends my grant of a new trial on the issue of past medical expenses [] was erroneous because the $444,525.56 awarded was the stipulated amount of past medical expenses I instructed the jury to award if it found [Appellant] liable. However, with Mr. Mader likely to incur additional medical expenses during the pendency of the new-trial, past medical expenses will likely be greater than $444,525.56 at the new trial. Having a new trial on medical expenses also avoids the unnecessary confusion that is likely if the new jury hears extensive evidence of Mr. Mader's pain and suffering during tissue debridement, amputation and other medical procedures but is denied the ability to award past medical expenses.

Trial Court Opinion, 7/5/18, at 5.

We disagree, as the record supports the jury's award of $444,525.26 for past medical expenses. The record unequivocally reflects that the parties stipulated to $444,525.56 as the amount of Mader's past medical expenses. N.T., 12/6/17, at 2 (Stipulation By Counsel). The record further reflects that the trial court expressly instructed the jury that it was to award that amount

_____

[1] Arguably, we could conclude that the trial court's award of a new trial on both past medical expenses and future medical expenses was improper because Mader failed to raise a specific allegation of error with respect to those damages categories in his post-trial submissions. See Pa.R.C.P. 227.1(b)(2) ("post-trial relief may not be granted unless the grounds therefor . . . are specified in the motion"). We decline to do so in this instance, however, because Mader did intersperse arguments relating to past and future medical expenses in his post-trial filings that formed the basis of the trial court's grant of a new trial as to those damages categories.

to Mader if it found Appellant caused Mader's harm. N.T., 12/8/17, at 68-69 (Jury Charge Instructions).

This Court has explained that "stipulations are binding upon the court as well as on the parties agreeing to them." Kershner v. Prudential Ins. Co., 554 A.2d 964, 966 (Pa. Super. 1989) (en banc). Additionally, "[w]e presume that juries follow the trial court's instructions." Renninger v. A & R Mach. Shop, 163 A.3d 988, 1000 (Pa. Super. 2017), appeal denied, 179 A.3d 7 (Pa. 2018). Given this authority, we cannot conclude that the jury's decision shocks one's sense of justice, where the jury – per the trial court's instructions – awarded Mader the precise amount stipulated to by the parties for past medical expenses. See Carroll, 939 A.2d at 874 ("a new trial should only be granted where the jury's verdict shocks one's sense of justice"). Therefore, the trial court abused its discretion in awarding Mader a new trial on damages related to past medical expenses.

We find the trial court's reasoning in support of its grant of a new trial on past medical expenses unavailing. The trial court cites no authority for its view that a new trial on past medical expenses is necessary because Mader is likely to incur additional medical expenses during the pendency of the new trial. Thus, the trial court provides no legal basis to support its decision. Moreover, the parties' stipulation reveals that the $444,525.56 in medical expenses represented Mader's medical costs from the time of injury until trial. N.T., 12/6/17, at 2 (Stipulation By Counsel). While the trial court is likely

correct that Mader would incur additional medical expenses during the pendency of a new trial, this stance disregards the jury's award of $55,474.44 in future medical expenses. Per the trial court's instructions, this amount was to compensate Mader for all medical expenses that the jury determined he would "reasonably incur in the future for the treatment and care of his continuing injuries." N.T., 12/8/17, at 69 (Jury Charge Instructions). Thus, Mader has already been compensated for medical expenses incurred since the first trial. Accordingly, we reverse the trial court's grant of a new trial on past medical expenses.

In its second issue, Appellant argues that the trial court abused its discretion in granting Mader a new trial on future medical expenses. Appellant contends that the jury's award of future medical expenses was supported by the expert testimony and cost projections offered by Appellant, and is therefore supported by the record.

The trial court provided the following explanation for its decision to grant a new trial as to future medical expenses:

> [Appellant] next contends my grant of a new trial on the issue of future medical expenses is erroneous. The . . . reasons [Appellant] provides are the award is between the amounts projected by the parties' life care planners, the award of $55,474.44 is close to the $42,636.65 to $50,483.67 projected by [Appellant]'s life care planner, Mr. Mader's life care planner exaggerated his future medical expenses, Mr. Mader did not follow all doctor's orders and there was evidence supporting the $55,474.44 future medical expense verdict. Even if this all were true, it is still impossible to known [sic] how the jury arrived at $55,474.44 for future medical expense. It is most likely that the jury arrived at that amount because, when it is added to the

> stipulated past medical expenses, the total is a nice round number, $500,000. [Appellant] mistakedly [sic] presumes a jury that irrationally determines Mr. Mader is not entitled to any compensation for his excruciating pain or disfiguring amputations and burns rationally calculated future medical expenses. Additionally, similar to the situation with past medical expenses, the life care plans at the new trial will have to project different amounts because medical expenses incurred during the pendency of the new trial no longer can be classified as future medical expenses.

Trial Court Opinion, 7/5/18, at 6.

At trial, the jury heard conflicting expert opinion testimony regarding Mader's future medical expenses. Appellant presented testimony indicating that Mader's injuries were healing well, that he required minimal ongoing care, and that his future medical expenses would amount to anywhere between $42,646.65 to $50,483.67. See N.T., 12/6/17, at 144-49 (Kelly Campbell). Conversely, Mader presented evidence that he would need extensive ongoing care, including numerous knee and hip replacements, a personal care aid that he would eventually need full time, a new house, and consequently, Mader would need $2,183,486 for future medical expenses. See Mader's Pretrial Statement, Exhibit A, Life Care Plan, 12/16/16.

Given that the jury's award of $55,474.44 for future medical expenses is far closer to the projections of Appellant's experts, it is apparent that the jury resolved the conflicting testimony regarding Mader's future medical needs in favor of Appellant's experts. The record supports the jury's determination. The evidence established that despite his injuries, Mader is able to travel and leads a fairly active lifestyle. See Appellant's Pretrial Statement, Expert

Reports of Mark L. Heckman, 9/27/17, and Thomas Muzzonigro, M.D., 9/6/17. Thomas Muzzonigro, M.D. (Dr. Muzzonigro), an orthopedic surgeon, testified on behalf of Appellant regarding the likelihood that Mader would have to undergo multiple knee and hip replacement surgeries stemming from his partial foot amputations. See N.T., 12/6/17, at 59-60, 70-80 (Dr. Muzzonigro). Dr. Muzzonigro opined that Mader's injuries did not place him at any greater risk for needing knee and hip replacement surgeries than someone who – like Mader – had a pre-existing arthritic condition, and that even if he did need surgery, repeated knee and hip replacements would not be necessary. Id. at 70-80. The jury further heard testimony that Mader's condition did not require him to obtain a new home or receive the assistance of a home health aide. N.T., 12/6/17, at 149 (Kelly Campbell).

Therefore, based upon our review of the record, we conclude that the trial court abused of its discretion in awarding a new trial as to future medical expenses. It is well-settled that "a fact-finder is permitted to accept all, part, or none of the testimony, and it is within the fact-finder's exclusive province to resolve conflicts in that testimony." Haan v. Wells, 103 A.3d 60, 72 (Pa. Super. 2014). Instantly, the jury's award of $55,474.44 – in excess of but closer to the projections of Appellant's experts – indicates that the jury resolved the conflicts in the testimony and found Appellant's evidence and expert opinions to be more credible than that of Mader. Having carefully reviewed the record, we conclude that the evidence supports the jury's

determinations, and the trial court abused its discretion by awarding a new trial on future medical expenses.

As with its explanation for disturbing the jury's award for past medical expenses, the trial court's belief that a new trial is necessary as to future medical expenses simply by virtue of there being a new trial on other damages categories is unavailing and unsupported by any legal authority. Likewise, the trial court's estimation that a jury that "irrationally" failed to award Mader damages for pain and suffering and disfigurement could not "rationally calculate" an appropriate award of future medical expenses is similarly erroneous and unsupported by any legal authority. As discussed above, the evidence of record supports the jury's award of future medical expenses. The trial court, in disrupting that award, usurped the jury's fact-finding role and committed an abuse of discretion. Accordingly, we reverse the trial court's grant of a new trial on future medical expenses.

In its third issue, Appellant argues that the trial court abused its discretion in granting Mader a new trial on past lost earnings and future lost earning capacity. Appellant contends that the jury's decision not to award any damages for these categories was supported by the record. Specifically, Appellant points to testimony indicating that Mader successfully operated his masonry business while he was recovering from his injuries, and that after he decided to close the business, he made no attempt to find alternative employment despite possessing the ability to do.

The trial court, in awarding Mader a new trial on past lost earnings and future lost earning capacity, reasoned that there was evidence that Mader's injuries resulted in a loss of wages. Trial Court Opinion, 7/5/18, at 7. The trial court explained that "[a] jury . . . may not withhold lost wages when the evidence in the case uncontradictedly establishes the loss of wages as the result of the negligence which they, the jury, have adjudicated against the responsible defendant." Id. (quoting Todd v. Bercini; 92 A.2d 538, 539 (Pa. 1952)).

As the trial court noted, to recover for the loss of wages, a plaintiff must establish a wage loss that is the result of the negligence of the defendant. Bercini; 92 A.2d at 539. "With respect to impairment of earning capacity, the law requires only proof that the injured person's economic horizons have been shortened as a result of the tortfeasor's negligence." Serhan v. Besteder, 500 A.2d 130, 134 (Pa. Super. 1985). "The consideration of loss of earning capacity is not solely the comparative amount of money earned before or after an injury. The true test is whether or not there is a loss of earning power, and of ability to earn money." Id. (quotations and citations omitted). An award of damages for lost future earning capacity must be supported by evidence "linking [the plaintiff's] injuries to loss of earning capacity." Id.

We have also explained that "[i]n these matters plaintiffs have a duty to mitigate damages." Stultz v. Reese Bros., 835 A.2d 754, 764 (Pa. Super.

2003). "The burden of proving that a plaintiff failed to exercise reasonable diligence in seeking comparable or equivalent employment lies with the defendant[]." Id. "It is appropriate for a trial court to reduce the recovery of an injured party by the amount of losses which could have been avoided by the reasonable efforts of the injured party." Forest City Grant Liberty Assocs. v. Genro II, Inc., 652 A.2d 948, 952 (Pa. Super. 1995). The duty to mitigate damages "prevents the injured party from being rewarded for its failure to act." Id.

Upon review, we agree with the trial court that the record does not support the jury's failure to award Mader damages for past lost earnings and future lost earning capacity. Mader presented the testimony of Anna Gaines, M.D., an expert in the field of neurologic and orthopedic musculoskeletal medicine, who stated that Mader would no longer be able to work as a mason because his amputations prevented him from working on elevated surfaces and climbing ladders. See N.T., 12/6/17, at 126-27 (Anna Gaines, M.D.). Additionally, both parties' vocational experts testified that Mader was no longer able to perform masonry work. Mader presented the testimony of Celia Evans, a vocational counseling and evaluation expert, who stated that based on his injuries, there was "no way" Mader could return to his work as a mason and there were "no occupational areas that [Mader] could perform[.]" N.T., 12/5/17, at 17-19. Mark Heckman (Heckman), an expert in the field of vocational rehabilitation, testified on behalf of Appellant that after he reviewed

Mader's medical records, he concluded that Mader was limited to "sedentary and light and unskilled and semi-skilled work that [Heckman] felt [Mader] could still do." N.T., 12/7/17, at 30. Heckman also opined that the jobs Mader could perform would pay him substantially less than his work as a mason. Id. at 32; see also Appellant's Trial Exhibit DDDD. Thus, based on this testimony, the parties do not dispute that Mader is unable to work as a mason, and is incapable of earning as much as he did prior to the accident.

The record further reveals that following his accident, Mader's masonry business suffered losses. For example, in 2013, the year after the accident, when Mader was no longer able to perform masonry work, his earnings decreased to $17,319 – a reduction of $40,221 from his pre-accident earnings. Appellant's Trial Exhibit DDDD. Given that Mader was no longer able to work as a mason, and that he was the owner and primary operator of a small masonry business, this decline in earnings supports the conclusion that Mader suffered lost wages as a result of his injuries.

Appellant emphasizes testimony that Mader did not do all that was necessary to mitigate his wage loss damages. For example, Mader cut his business advertising budget after his accident, see N.T., 12/5/17, at 8-9 (Steven Mader), which Appellant asserts caused Mader's business to lose money after the accident. There is also no indication that Mader sought alternative employment after his business closed. While this evidence could support a reduced amount of damages for past lost earnings and future lost

earning capacity, it does not support the jury's award of zero damages. As the trial court recognized, a jury cannot withhold damages for wage loss resulting from the defendant's negligence. See Bercini; 92 A.2d at 539. In this case, there is no dispute that Mader's injuries precluded him from working as a mason, and that consequently, his business and earning capacity suffered appreciable losses. Accordingly, the trial court did not abuse its discretion in determining that the jury's award of zero damages for past lost earnings and future lost earning capacity shocked one's sense of justice. We therefore affirm the trial court's award of a new trial as to damages for past lost earnings and future lost earning capacity.

In its fourth and final issue, Appellant argues that the trial court abused its discretion when it granted Mader "a new trial on pain and suffering, embarrassment, humiliation, and loss of enjoyment of life after the date that his wounds healed, where the jury was presented with evidence and expert testimony on those issues that supported its verdict." Appellant's Brief at 60-61. Specifically, Appellant points to evidence that Mader's wounds healed within a year of the accident, that he exercises regularly and travelled extensively in the year following his accident, and that he failed to mitigate the impact of the injury by failing to follow his doctors' orders.

"Our Supreme Court has held that jury verdicts awarding zero damages are against the weight of the evidence where undisputed medical evidence reveals that the plaintiff has suffered injuries in the accident that were of a

type normally associated with pain and suffering." Burnhauser v. Bumberger, 745 A.2d 1256, 1261 (Pa. Super. 2000). The Supreme Court has also held, however, "that a jury's award of medical expenses without compensation for pain and suffering should not be disturbed where the trial court had a reasonable basis to believe that: (1) the jury did not believe the plaintiff suffered any pain and suffering, or (2) that a preexisting condition or injury was the sole cause of the alleged pain and suffering." Davis v. Mullen, 773 A.2d 764, 767 (Pa. 2001).

Upon review, we conclude that the trial court did not abuse its discretion in awarding Mader a new trial on damages for past, present, and future pain and suffering, embarrassment and humiliation and loss of enjoyment of life. Notably, Appellant "does not dispute that Mader is entitled to a new trial on the pain and suffering he experienced between the date of the accident and when his wounds healed[,]" which Appellant argues occurred within a year of the accident. Appellant's Brief at 60-62. Appellant's contention that Mader is not entitled to damages for present and future pain and suffering following its concession that Mader is entitled to some award for past pain and suffering for his injuries, which include the partial amputation of both feet, is tenuous at best, as it disregards the permanent physical harm it concedes Mader has suffered.

Second, there is ample undisputed evidence of record supporting the trial court's conclusion that Mader is entitled to damages for past, present,

and future pain and suffering, embarrassment and humiliation and loss of enjoyment of life. For example, Megan Cortazzo, M.D. (Dr. Cortazzo), an expert in the medical field of physical rehabilitation, testified to the chronic pain Mader will suffer:

> [T]he electrocution resulted in extreme burns to his feet which resulted in a transmetatarsal amputation bilaterally.
>
> In addition to his skin burn injuries from the electrocution, he also sustained cognitive issues related to the electrocution. . . . Some of these issues continue to this day.
>
> Because of his transmetatarsal amputation, his gait pattern has been significantly altered to the point that it is causing pain in his knees, hips and back.
>
> And as I testified to he is continually being evaluated and treated for this type of pain.
>
> I also stated that although he can continue to work with physical therapy, teach him how to exercise and work . . ., nothing is ever going, to completely take his pain away. He will have chronic pain for the rest of his life.

N.T., 12/1/17, at 37-38.

Appellant cites no testimony or other evidence to indicate that Mader will not continue to suffer chronic pain from his injuries. Instead, Appellant contends that Mader's inconsistent use of the orthotic devices designed to assist him in walking precludes him from recovering damages for present and future pain and suffering. See, e.g., N.T., 12/6/17, at 115-19 (Anna Gaines, M.D.). This evidence, if credited by the jury, could serve as a basis for reducing Mader's award for pain and suffering. It does not, however, support the jury's failure to award any damages for present and future pain and

suffering, as there was no testimony or evidence that the orthotic devices would eradicate Mader's pain. See Davis, 773 A.2d at 767; Burnhauser, 745 A.2d at 1261. Moreover, Kelly Campbell, the Life Care Planner who testified on behalf of Appellant, stated that Mader would require ongoing treatment for pain-related issues. N.T., 12/7/17, at 9 (Kelly Campbell). Thus, both parties' experts agree that Mader will suffer chronic pain as a result of his amputations. We therefore conclude that the trial court did not abuse its discretion in granting Mader a new trial on damages for past, present, and future pain and suffering, embarrassment and humiliation and loss of enjoyment of life.[2]

In sum, we reverse the trial court's grant of a new trial on damages related to past medical expenses and future medical expenses, and affirm the grant of a new trial on damages related to past lost wages, future lost earning capacity, past, present, and future pain and suffering, embarrassment and

_____

[2] Referencing Appellant's concession that the jury's failure to award any damages for past pain and suffering and disfigurement was improper, Mader argues that the trial court "was well within its discretion to order a new trial on all damages." Mader's Brief at 33 (emphasis in original). We disagree. Mader cites no authority expressly stating that the finding of error with respect to part of a jury's damages award mandates a new trial on all damages. Second, the trial court, in its Rule 1925(a) opinion, separately addressed each category of damages and why it found the award with respect to each category to be improper. Addressing the alleged errors separate and discretely comports with case law on the issue of new trials. As our Supreme Court explained, "[t]his Court has consistently held that where the only trial errors disclosed in the record deal with specific and discrete issues, the grant of a new trial should be limited to those issues." McNeil v. Owens-Corning Fiberglas Corp., 680 A.2d 1145, 1148 (Pa. 1996).

humiliation and loss of enjoyment of life, and disfigurement. Accordingly, we remand this case to the trial court for proceedings consistent with this decision.

Order reversed in part and affirmed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/2018