J-A24013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MONICA GAVIN AND LUCIA CAREZANI, EXECUTRIX OF THE ESTATE OF JAMES GAVIN, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| ELAINE LOEFFELBEIN | : | No. 341 EDA 2016 |

Appeal from the Judgment Entered March 11, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2014-C-914

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

MEMORANDUM BY BOWES, J.:                          **FILED AUGUST 08, 2019**

This matter comes before this Court on remand from the Pennsylvania Supreme Court, following its order vacating our May 1, 2017 decision and remanding the matter to us for proceedings consistent with its opinion.  **See Gavin v. Loeffelbein**, 205 A.3d 1209 (Pa. 2019) ("**Gavin II**").  Upon applying its ruling to the issues raised in this appeal, we vacate the judgment and remand for further proceedings consistent with this memorandum.

A succinct history of this case is as follows.  Appellant Monica Gavin ("Monica") was married to James Gavin ("James"), who was the brother of Appellee Elaine Loeffelbein ("Elaine").[1]  With a divorce action pending, Monica

---

[1] On April 22, 2019, counsel for Elaine filed a suggestion of death in this Court indicating that Elaine died on August 8, 2018, and no estate had been opened.

and James lived separate and apart within the marital residence where their two children (ages seventeen and fourteen) also resided. At the end of May 2012, upon the petition of James's divorce attorney, emergency guardians of James's person and estate were appointed.[2] The guardian of the person

---

[2] The emergency guardians were appointed pursuant to 20 Pa.C.S. § 5513, which provides as follows:

> Notwithstanding the provisions of section 5511 (relating to petition and hearing; independent evaluation), the court, upon petition and a hearing at which clear and convincing evidence is shown, may appoint an emergency guardian or guardians of the person or estate of a person alleged to be incapacitated, when it appears that the person lacks capacity, is in need of a guardian and a failure to make such appointment will result in irreparable harm to the person or estate of the alleged incapacitated person. The provisions of section 5511, including those relating to counsel, shall be applicable to such proceedings, except when the court has found that it is not feasible in the circumstances. An emergency guardian so appointed for the person or estate of an alleged incapacitated person shall only have and be subject to such powers, duties and liabilities and serve for such time as the court shall direct in its decree. An emergency order appointing an emergency guardian of the person may be in effect for up to 72 hours. If the emergency continues, then the emergency order may be extended for no more than 20 days from the expiration of the initial emergency order. After expiration of the emergency order or any extension, a full guardianship proceeding must be initiated pursuant to section 5511. The court may also appoint an emergency guardian of the person pursuant to this section for an alleged incapacitated person who is present in this Commonwealth but is domiciled outside of this Commonwealth, regardless of whether the alleged incapacitated person has property in this Commonwealth. An emergency order appointing an emergency guardian of the estate shall not exceed 30 days. After 30 days, a full guardianship proceeding must be initiated pursuant to section 5511.

promptly moved James into an assisted living facility at the end of May 2012. The emergency guardian for James's estate was given the power and duty to ascertain and administer all of James's property, and to identify and ascertain the whereabouts of all property he co-owned. Ultimately, on August 20, 2012, a permanent guardian was appointed for James.

In the meantime, James had valuable memorabilia, rare books, autographs, and antiques that he kept in boxes in the basement of the former marital residence ("FMR"). Some of the boxes had been removed at James's request by a neighbor to a rented storage facility in April 2012, but other boxes remained in the FMR. Based upon James's fear that Monica would destroy or dissipate the collection, Elaine contacted James's guardian and asked that she be permitted to enter the FMR to retrieve the rest of the boxes. The guardian refused Elaine's request, but indicated that she would see to it. When days passed and the items remained in the FMR, Elaine contacted James's attorney, who informed her that James had the right to remove his personal things from the FMR. Thereafter, Elaine and James went to the FMR and were admitted by the children. Elaine, James, and the two children took the remaining eight to ten boxes to the storage facility.

Monica was later granted the right to inventory James's collection by the family court. The boxes were taken to the office of James's attorney for Monica to inspect. Left alone in a room with them, Monica determined that items worth $236,000 were missing. As a result, Monica filed a *pro se*

complaint against Elaine, and, eventually, a counseled amended complaint containing counts of trespass, conversion, negligence,[3] and punitive damages. James died before the case proceeded to trial, and the executrix of his estate was substituted as a party plaintiff ("the Estate").

At trial, the major issue was whether James had the capacity to consent to Elaine's conduct. Monica and the Estate (collectively "Appellants") maintained that the appointment of a guardian to administer James's estate, even on an emergency basis before a full and final adjudication as to his capacity, rendered him incapable of consenting. Elaine contended, and the trial court agreed, that James retained some decision-making authority in the absence of an adjudication of incapacity, and instructed the jury to determine whether he in fact had capacity on July 9, 2012.

The jury found in favor of Elaine on the conversion and negligence counts after the trial court entered a nonsuit as to trespass and punitive damages. Appellants filed a post-trial motion alleging a number of bases warranting a new trial. The trial court denied the motion, and Appellants timely appealed, and subsequently perfected appellate jurisdiction by filing a

---

[3] The alleged negligence was composed of Elaine's taking the missing collectibles or allowing someone else to take them, as well as her failure to (a) "obtain lawful consent before removing the collectibles" from the FMR; (b) "properly store and safeguard the collectibles;" (c) "inventory and oversee the collectibles;" (d) "properly insure the collectibles;" (e) "prevent the collectibles from being lost or stolen;" (f) "return or replace the collectibles . . . upon demand." Second Amended Complaint, 5/29/14, at ¶ 26.

- 4 -

praecipe for the entry of judgment on the verdict. On appeal, Appellants challenged the trial court's grants of nonsuits as to trespass and punitive damages, as well as the trial court's instructions (or lack thereof) to the jury as to (1) James's capacity to consent; (2) the availability of mistake of law and mistake of fact as defenses to conversion; (3) Elaine's duty to exercise reasonable care over the collectibles in her possession; and (4) spoliation.

This Court discerned no reversible error on any issue. As to the question of James's continued ability to make decisions about his property after the appointment of the emergency guardian, but before the adjudication of incapacity pursuant to 20 Pa.C.S. § 5511, this Court held that the temporary guardianship order had expired before July 9, 2012, and, even if it had not, the order did not completely strip James of ability to consent to Elaine's actions. **Gavin v. Loeffelbein**, 161 A.3d 340 (Pa.Super. 2017) ("**Gavin I**") (vacated by **Gavin II**, **supra**).

Our Supreme Court granted allowance of appeal to address the meaning and effect of the emergency guardian statute, 20 Pa.C.S. § 5513. That statute provides, in relevant part:

> the court, upon petition and a hearing at which clear and convincing evidence is shown, may appoint an emergency guardian or guardians of the person or estate of a person alleged to be incapacitated, when it appears that the person lacks capacity, is in need of a guardian and a failure to make such appointment will result in irreparable harm to the person or estate of the alleged incapacitated person. . . . An emergency guardian so appointed for the person or estate of an alleged incapacitated person shall only have and be subject to such powers, duties and

liabilities and serve for such time as the court shall direct in its decree.

20 Pa.C.S. § 5513.

Our Supreme Court rejected this Court's holding that an individual may continue to exercise some manner of control over his or her estate until he or she is adjudicated incompetent following the procedures of § 5511. Rather, it held that "by assigning specific duties to the guardian, the orphans' court designates those areas of decision making to be within the exclusive purview of the guardian." **Gavin II**, **supra** at 1223. Thus, "James'[s] ability to consent to [Elaine's] conduct should be determined by inverse reference to the duties assigned to" the emergency guardian. **Id**. at 1224. As such, "the jury instructions regarding capacity were misleading." **Id**. The Court therefore vacated our decision and remanded to us "for proceedings consistent with this Opinion." **Id**. at 1225.

Accordingly, we revisit the issues Appellants have raised on appeal:

A.   Did the trial court's instructions to the jury contain substantial errors so that relief must be granted?

   1.   Did the court err by charging the jury to determine whether James . . . consented to the taking of marital property where he had been appointed a temporary guardian with authority over all his property?

   2.   Did the court err by failing to charge the jury that mistake of law and mistake of fact are not defenses to conversion?

   3.   Did the court err by failing to charge the jury that [Elaine] had a duty of reasonable care over collectibles she voluntarily took control over?

> 4. Did the court err by charging the jury on spoliation against Appellants where there was no bad faith and the items allegedly disposed of had no evidentiary value?
>
> B. Did the court err by granting a nonsuit as to trespass where James . . . could not lawfully consent to [Elaine] entering the [FMR] and taking the collectibles?
>
> C. Did the court err by granting a nonsuit as to punitive damages where Appellant[s] proved an intentional tort and evidence was offered to support the conclusion that [Elaine] acted in total disregard for the rights of others?

Appellants' brief at 6 (unnecessary capitalization omitted).

We conclude that application of our Supreme Court's holding to Appellants' issue (A)(1) requires us to vacate the judgment and remand for a new trial on Appellants' conversion claim as well as the claim that Elaine was negligent in failing to obtain lawful consent before removing the collectibles from the FMR. The impact of our Supreme Court's decision upon question (B) is not readily ascertainable, and we therefore leave its resolution in the first instance to the trial court with the benefit of advocacy from the parties. However, issues (A)(2)-(4) and (C) are not affected by our Supreme Court's opinion, and we affirm the trial court's rulings on those matters.[4]

---

[4] Although a new trial is warranted based upon Appellant's first question, we review the remaining issues both to define the scope of the new trial, and to address issues likely to re-arise upon retrial. *See*, *e.g.*, *Mader v. Duquesne Light Co.*, 199 A.3d 1258, 1270 n.2 (Pa.Super. 2018) ("[W]here the only trial errors disclosed in the record deal with specific and discrete issues, the grant of a new trial should be limited to those issues.") (internal quotation

Appellants' initial questions concern allegations of error in the trial court's instructions to the jury. Our review of these claims is governed by the following standard.

> Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Error will be found where the jury was probably misled by what the trial judge charged or where there was an omission in the charge. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error. In reviewing a trial court's charge to the jury, we must look to the charge in its entirety.

*Tincher v. Omega Flex, Inc.*, 180 A.3d 386, 397-98 (Pa.Super. 2018) (cleaned up).

Appellants' first argument is premised upon the position that James, being incapacitated on July 9, 2012, was incapable of giving consent to Elaine's entry into the marital home and removal of his personal memorabilia collection from that residence. Based upon this premise, they claim that the trial court erroneously instructed the jury that it could determine whether James had consented to Elaine's actions on July 9, 2012. Appellant's brief at 16.

The record indicates that the trial court outlined various sections of the guardianship law to the jury, including the definition of an incapacitated

---

marks and citation omitted). We additionally note that, as the High Court vacated our prior opinion, we include herein anew our full analysis from that opinion of the issues unaffected by the Supreme Court's rulings.

- 8 -

person and excerpts of the statute outlining the procedure for appointment of an emergency guardian. *See* N.T. Trial, 6/12/15, at 964-67. The trial court also read portions of the May 24, 2012 order appointing an emergency guardian for James and then summarized what occurred during the guardianship proceeding. The court thereafter advised the jury:

> With respect to the emergency guardian, the emergency guardian of the person was limited to placement, and to make medical decisions. And the emergency guardian of the Estate was for the powers that I mentioned, in terms of – including other things – assembling [James's] personal property.
>
> The power to the emergency guardian of the person is not exclusive to the guardian; that is to say, that [James] was not precluded from expressing his wishes, and making some decisions regarding his personal property.

*Id*. at 969.

This charge fails to conform to the law as stated by our Supreme Court, and thus, amounts to fundamental error. The May 24, 2012 order gave to James's emergency guardian of the estate the power and duty "to ascertain, assemble and administer all of the property owned by James" as well as to identify and locate "any and all" property James co-owned. Order, 5/24/12, at 2. Based upon the High Court's decision in this case, those powers were exclusive to his emergency guardian pursuant to § 5513, and James no longer had the authority to make decisions regarding the disposition of any of this property. As this error goes to the heart of Appellants' claim that Elaine lacked authority to remove James's property from the residence, Appellants are

entitled to a new trial as to their counts for conversion and negligent failure to obtain valid consent to remove and refuse to return the collectibles.[5]

We next consider the other issue affected by our Supreme Court's construction of the emergency guardian statute: Appellants' contention that the trial court improperly granted a nonsuit against them as to their trespass cause of action. The following principles govern our consideration of this claim.

> A nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiffs, could not reasonably conclude that the elements of the cause of action had been established. Furthermore, all conflicts in the evidence must be resolved in the plaintiff[s'] favor. In reviewing the evidence presented we must keep in mind that a jury may not be permitted to reach a verdict based on mere conjecture or speculation. We will reverse only if the trial court abused its discretion or made an error of law.

*Barnes v. Alcoa, Inc.*, 145 A.3d 730, 735 (Pa.Super. 2016).

In Pennsylvania, a person is subject to liability for trespass on land in accordance with the dictates of Restatement (Second) of Torts § 158. *Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge*, 102 A.3d 501, 506 (Pa.Super. 2014).

---

[5] James's capacity, or lack thereof, to consent to removal of the property from the FMR had no bearing on Appellants' claims that Elaine was negligent in her handling of the property during the time that it was in her possession. As such, Appellants are not entitled to a new trial as to those contentions. *See, e.g.*, *Mader v. Duquesne Light Co.*, 199 A.3d 1258, 1270 n.2 (Pa.Super. 2018) ("[W]here the only trial errors disclosed in the record deal with specific and discrete issues, the grant of a new trial should be limited to those issues.") (internal quotation marks and citation omitted).

One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally

(a) enters land in the possession of the other, or causes a thing or a third person to do so, or

(b) remains on the land, or

(c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (Second) of Torts § 158.

"Conduct which would otherwise constitute a trespass is not a trespass if it is privileged." Restatement (Second) of Torts § 158, Comment e. Furthermore, consent is a defense to all tort claims. *Id*. at § 892A(1). For example, there is no liability for trespass by illegal entry "where such entry was by permission of the owner." *Gedekoh v. Peoples Nat. Gas Co.*, 133 A.2d 283, 284 (1957) (citing Restatement of Torts § 158). "To be effective, consent must be (a) by one who has the capacity to consent or by a person empowered to consent for him, and (b) to the particular conduct, or to substantially the same conduct." Restatement (Second) of Torts § 892A(2). However, even if the consenting person lacked capacity to consent, because the person "is a child or one of deficient mental capacity, the consent may still be effective if he is capable of appreciating the nature, extent and probable consequences of the conduct consented to, although the consent of a parent, guardian or other person responsible is not obtained or is expressly refused." *Id*. at Comment b.

To establish the circumstances surrounding Elaine's July 9, 2012 entry into the Jordan Road property, Monica presented as witnesses her children, Edric and Aubrey, and Elaine. Elaine reported that James asked her to come with him to his home. When Elaine arrived at the residence, she followed James inside. Edric testified that, when Elaine and James came to the door, he and his sister granted them entry. Aubrey confirmed that James and Elaine arrived together to enter the residence.

Monica suggests that James could not authorize entry into his own home because he had been adjudicated an incapacitated person on May 24, 2012. Our Supreme Court held that the appointment of an emergency guardian divested James of the authority to exercise powers that had been given to the guardian. **See Gavin II**, **supra** at 1224. ("James'[s] ability to consent to [Elaine's] conduct should be determined by inverse reference to the duties assigned to" the emergency guardian). However, the High Court also noted that James's ability to consent to Elaine's entry into the FMR "may not implicate the duties assigned to his guardian of the estate." **Id**. at 1225 n.22. Furthermore, the parties have not briefed whether the consent of the teenage residents of the FMR validated Elaine's entry on the land. Therefore, rather than determine in the first instance whether that power was encompassed within the powers granted to James's guardians, without the benefit of advocacy from the parties on the issue, we leave for the trial court to

determine upon remand whether the trespass claim should be reinstated for presentation to the jury upon retrial of Plaintiffs' conversion claim.

We now resolve the issues not impacted by our Supreme Court's decision in this case, starting with the remaining challenges to the jury instructions, which we review pursuant to the standard of review noted *supra*. Appellants' next such complaint is that the trial court's charge as to the elements of conversion was incorrect. Conversion is "the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." **PTSI, Inc. v. Haley**, 71 A.3d 304, 314 (Pa.Super. 2013) (citations omitted). The trial court told the jury the following:

> Now I'm going to define conversion. Conversion essentially requires proof that the Defendant interfered without lawful justification, with a Plaintiff's right of property in a particular asset.
>
> Showing that the Defendant acted without lawful justification is an element of the prima facie case of conversion on which the Plaintiff bears the burden of proof. Lawful justification is not an affirmative defense.
>
> Where one lawfully comes into possession of a chattel, a conversion occurs under the Pennsylvania Law, if a demand for the chattel is made by the rightful owner and the other party refuses to deliver.

N.T. Trial, 6/12/15, at 971.

Appellants' position as to the conversion charge is that the trial court "erred by failing to charge the jury that mistake of law and mistake of fact are not defenses to conversion." Appellants' brief at 26. In **Hatwood v. Hosp.**

- 13 -

*of the Univ. of Pennsylvania*, 55 A.3d 1229, 1235 (Pa.Super. 2012), we articulated the settled principle that "only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial." We also repeated the ensconced precept that "a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Id*. Simply put, the trial court was not required to instruct the jury in accordance with Appellants' proposed point for charge and, as long as the proper legal concepts were conveyed to the jury, a new trial will not be awarded.

Herein, the trial court set forth the elements of a cause of action in conversion, including the fact that conversion occurs when property is taken without legal justification. The trial court's repeated admonition that Elaine's taking of the property had to be **legally justified** adequately expressed the concept that "mistake of law" and "mistake of fact" are not defenses to conversion. The conversion charge, as a whole, was neither unclear nor inadequate, and it did not have a tendency to mislead or confuse the jury regarding the applicable law. Hence, the trial court may elect to charge the jury the same way in the new trial.

Appellants next maintain that the court erred when it did not "charge the jury that defendant had a duty of reasonable care over collectibles she

voluntarily took control over." Appellants' brief at 30 (emphasis omitted).

The trial court gave the following instruction as to negligence:

> Now I'm going to define negligence for you. In this case, you must decide whether Elaine Loeffelbein was negligent. A person must act in a reasonably careful manner to avoid harming others. The care required varies according to the circumstances, and the degree of danger at a particular time.
>
> You must decide how a reasonably careful person would act under the circumstances established by the evidence in this ease. A person who does something reasonably – I'm sorry. A person who does something a reasonably careful person would not do under the circumstances, is negligent. A person also can be negligent by failing to act. A person who fails to do something a reasonably careful person would do under the circumstances is negligent.

N.T. Trial, 6/12/15, at 970-71.

Appellants argue that the court should have specifically mentioned that Elaine had a duty to reasonably care for the collection. This entire case was solely about items purportedly missing from the recovered boxes containing the collection. In light of the facts and Appellants' position at trial, the jury certainly was aware that the averments relating to Elaine's negligence concerned her actions that allegedly resulted in lost artifacts of memorabilia. We decline to award a new trial based upon the trial court's failure to include the wording that Elaine's duty of care related to the "collectibles she voluntarily took control over."

Appellants' final claim of error as to the jury instructions is that the court improperly charged the jury as to spoliation. The following facts are pertinent. Monica claimed that she inventoried about eighty percent of the boxed

collection from May 2012 through July 9, 2012. As noted, Monica performed a second inventory alone in Attorney Barr's office in May 2013. Monica averred that her second inventory revealed that 296 articles were gone, and that they were worth $236,000. In support of her position, Monica presented a spreadsheet inventory purportedly created prior to July 9, 2012, and pictures of some of the memorabilia in question. Monica professed that the computer that she used to create the inventory had crashed in the fall of 2013 and that the camera cards that she used to take pictures of the collectibles were damaged during a flood in her home. Monica admitted that she discarded the computer and camera cards.

During discovery, Elaine requested the computer and camera cards to ascertain if the spreadsheet inventory was actually prepared and if the pictures were taken before July 2012, instead of in May 2013, at the attorney's office. Elaine presented an expert witness who reported that, if Monica had not discarded the laptop and camera cards and had produced them for examination, information could have been recovered from the computer and camera cards regarding when the inventory spreadsheet was created and the pictures were taken. Elaine noted that Monica knew that the computer and camera cards could be pertinent in this matter by May 2013, when she allegedly discovered that articles were missing from the collection, and thereafter destroyed the laptop and camera cards in the fall of 2013.

As we observed in **_Rodriguez v. Kravco Simon Co._**, 111 A.3d 1191 (Pa.Super. 2015), penalties for spoliation of evidence have been applied since the early 17th century. The spoliation doctrine is applicable to any case "where 'relevant evidence' has been lost or destroyed." **_Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div._**, 781 A.2d 1263, 1269 (Pa.Super. 2001), *aff'd sub nom.* **_Mount Olivet Tabernacle Church v. Edwin Wiegand Div._**, 811 A.2d 565 (Pa. 2002). A party's destruction or loss of proof that is pertinent to a lawsuit can result in a variety of sanctions. **_Parr v. Ford Motor Co._**, 109 A.3d 682 (Pa.Super. 2014).

In reviewing the propriety of a sanction for spoliation, "we must determine whether the court abused its discretion." **_Id_**. at 701 (citation omitted). The trial court weighs three factors in deciding upon an appropriate penalty for spoliation, "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." **_Id_**. at 702 (citation omitted). For purposes of

> evaluation of the first prong, "the fault of the party who altered or destroyed the evidence," requires consideration of two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith. The duty prong, in turn, is established where: (1) the plaintiff knows that litigation against the defendants

- 17 -

is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial to the defendants.

*Id*. (cleaned up).

One sanction that a court may choose to impose when evidence is lost or destroyed is to instruct the jury that it may infer "that the destroyed evidence would have been unfavorable to the position of the offending party." *Rodriguez*, *supra* at 1196. The rationale for this spoliation inference is "nothing more than the common sense observation that a party who has notice that evidence is relevant to litigation and who proceeds to destroy evidence is more likely to have been threatened by" the proof in question. *Id*.

The crux of this lawsuit involved Monica's accusation that items of memorabilia were missing after the collection was taken on July 9, 2012. She represented that she inventoried eighty percent of the collection before July 9, 2012, and presented proof of her inventory that consisted of spreadsheets created in a computer and pictures contained in camera cards. An examination of the computer and camera card by Elaine's expert witness would have led to verification as to when the pictures were taken and the spreadsheets were created. After May 2013, when she purportedly discovered the missing items, Monica intentionally destroyed the computer and camera cards, which created evidence used in this lawsuit and which could have been examined by Elaine's expert.

Based upon these facts, the trial court allowed the jury, in its discretion, to decide whether Monica credibly explained why the computer and camera

card were unavailable for Elaine's inspection. To wit, the trial court disseminated the Standard Jury Instruction for Spoliation of Evidence, Instruction 5.60:

> If a party disposes of a piece of evidence before the other party had an opportunity to inspect it, and the party who disposed of the evidence should have recognized the evidence was relevant to an issue in this lawsuit, then you **may find** that this evidence would have been unfavorable to them, **unless they satisfactorily explain why they disposed of this evidence**.

N.T. Trial, 6/12/15, at 963-64 (emphases added).

On appeal, Appellants posit that there was no bad faith by Monica since the computer crashed and the camera cards were damaged by water. However, whether or not Monica acted in bad faith was wholly dependent on whether her testimony about how the objects came to be destroyed was worthy of belief. Appellate courts do not decide whether someone has testified truthfully, and we cannot find that Monica operated in "good faith" unless we credit her explanation of why she disposed of the evidence. The jury was given the task of deciding if Monica was being truthful about why she destroyed the computer and camera card. There was no error in this respect.

Appellants also suggest that the spoliation charge was not warranted because the computer and camera cards had "no evidentiary value." Appellants' brief at 34. Once again, a finding that the computer and camera cards had "no evidentiary value" requires that we credit that the computer crashed and that the cards were water-damaged. Elaine's expert witness reported that the computer would have revealed whether the spreadsheets

were created before July 2012 rather than after May 2013, when Monica had unfettered access to the collection alone in a room. In light of the facts in question, the important nature of the evidence in question, and Monica's actions, we cannot find that the trial court abused its discretion in giving the spoliation charge, and may properly to do so again upon retrial.

Finally, Appellants complain that the trial court improperly granted a nonsuit as to their claim for punitive damages. As noted above, we review the trial court's grant of a nonsuit for an error of law or abuse of discretion. ***Barnes***, ***supra*** at 735. A nonsuit is proper if the jury could not reasonably conclude that the evidence, viewed in the light most favorable to the plaintiffs, establishes the elements of a cause of action. ***Id***.

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. Additionally, this Court has stressed that, when assessing the propriety of the imposition of punitive damages, the state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious.

***Hutchison ex rel. Hutchison v. Luddy***, 870 A.2d 766, 770-71 (Pa. 2005) (cleaned up).

Appellants' position that Elaine's conduct warranted the imposition of punitive damages is untenable. Appellants offered no evidence to suggest that Elaine operated with evil motive or with reckless indifference to anyone's

rights. Elaine's actions were not so outrageous as to demonstrate willful, wanton, or reckless conduct. Elaine acted upon legal advice that James could enter his own home and retrieve his own personal property. That our Supreme Court ultimately reversed this Court's agreement with that legal advice does not elevate Elaine's conduct into the realm of the outrageous. Punitive damages clearly were not warranted herein, and the trial court correctly granted nonsuit as to that claim. *See Phillips v. Cricket Lighters*, 883 A.2d 439, 447 (Pa. 2005) (holding manufacturer that failed to place child safety features on its lighters to avoid harm to children playing with them did not engage in conduct that "was so outrageous as to support an award of punitive damages"); *Valentino v. Philadelphia Triathlon, LLC*, 150 A.3d 483, 488–89 (Pa.Super. 2016), *affirmed by equally divided court*, ___ A.3d ___, 2019 WL 2587779 (Pa. June 18, 2019) (ruling triathlon organizer was not subject to liability for punitive damages in connection with death of triathlon participant where allegations sounded in negligence, even though averments included that defendant was "inattentive to the needs of the contestants, failed to inspect or maintain the event course, failed to warn of or remove dangerous conditions, failed to properly plan or organize the event, failed to follow safety standards, and failed to properly train and supervise its employees"). Furthermore, nothing in our Supreme Court's decision warrants the relitigation of the issue of punitive damages upon remand for a new trial.

In sum, our Supreme Court's decision requires that verdicts in favor of Elaine on the claims of conversion and negligent failure to obtain valid consent to remove and refuse to return the collectibles be vacated and the case remanded for a new trial on those claims. We also vacate the nonsuit on Appellants' trespass claim and leave the question of the effect of our Supreme Court's decision on that count for the trial court to determine in the first instance. However, the nonsuit on the claim for punitive damages, as well as the defense verdict as to negligence in the handling of the collection during the time that it was in Elaine's possession, are affirmed and shall not be at issue in the new trial. Further, the trial court may instruct the jury on negligence, conversion, and spoliation as it did in the first trial.

Judgment vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Solano did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/8/19</u>