J-A05013-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| BRADLEY MYERS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FRANK SEBASTIANELLI, INDIVIDUALLY AND AS OWNER OF AND T/D/B/A AMERIPRIDE FENCE COMPANY | : | No. 926 WDA 2019 |
| | : | |
| APPEAL OF: FRANK SEBASTIANELLI, INDIVIDUALLY AND AS OWNER OF AND T/D/B/A AMERIPRIDE FENCE COMPANY | : | |

Appeal from the Order Entered May 24, 2019
In the Court of Common Pleas of Beaver County Civil Division at No(s):
No. 10839-2015

| | | |
|---|---|---|
| BRADLEY MYERS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| FRANK SEBASTIANELLI, INDIVIDUALLY AND AS OWNER OF AND T/D/B/A AMERIPRIDE FENCE COMPANY | : | No. 954 WDA 2019 |

Appeal from the Order Entered May 24, 2019
In the Court of Common Pleas of Beaver County Civil Division at No(s):
No. 10839-2015

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.*

_____

* Retired Senior Judge assigned to the Superior Court.

MEMORANDUM BY BENDER, P.J.E.:               FILED AUGUST 21, 2020

Appellant/Cross-Appellee, Frank Sebastianelli, individually and as owner of and t/d/b/a Ameripride Fence Company, and Appellee/Cross-Appellant, Bradley Myers, appeal from the trial court's May 24, 2019 order that granted in part Mr. Myers's motion for post-trial relief, and awarded him a new trial on the issues of past medical expenses, future medical expenses, past lost earnings, and future lost earning capacity. After careful review, we vacate and remand.

The trial court provided a comprehensive summary of the background of this case as follows:

> This case presents a personal injury claim arising from a work-related accident that occurred on the business property of [Mr. Sebastianelli] on March 13, 2014. The plaintiff is [Mr.] Myers and the defendant is [Mr.] Sebastianelli, individually and as owner of and t/d/b/a Ameripride Fence Company. The case proceeded to trial by jury before this [c]ourt, which commenced on November 27, 2018[,] and resulted in a jury verdict on December 3, 2018. After assessing liability and determining that [Mr. Sebastianelli] was 51% negligent and that [Mr. Myers] was 49% negligent, the jury awarded $500,000 in damages for past, present and future pain and suffering, embarrassment and humiliation, and loss of life's pleasures, but awarded zero dollars ($0.00) for past medical expenses, future medical expenses, past lost earnings, future lost earning capacity, and disfigurement. There were six entries on the verdict slip for the jury to award damages, and the jury awarded only the $500,000 on the line for pain and suffering, and entered zeros on each of the other five spaces.
>
> [Mr. Myers] filed a motion for post-trial relief, requesting a new trial limited to the issue of damages. [Mr. Sebastianelli] filed no post-trial motion. After receiving the briefs of the parties, the [c]ourt conducted an argument on the issues on March 20, 2019....

## FACTS/RECORD

- 2 -

Jury selection commenced and was completed on November 27, 2018.  Testimony began on November 28, 2018.  [Mr. Myers] was employed by Ryder Integrated Logistics, Inc. (hereinafter "Ryder") as a truck driver at the time of the accident and injuries in this case.  At the time of the accident on March 13, 2014, [Mr. Myers] was driving a Ryder truck delivering materials for Master Halco, Inc. (hereinafter "Halco")[,] to [Mr. Sebastianelli's] fence company.  He delivered the materials to [Mr. Sebastianelli] on the morning of March 13.  The forklift was not available to unload the materials, resulting in [Mr. Myers's] attempting to unload the materials by hand.  While [Mr. Myers] was unloading the materials, a piece of dunnage lifted up and swung towards him, striking his left leg and causing severe and permanent injuries to his leg and other parts of his body.[1]  The [c]ourt will not dwell on facts attendant to liability because the jury has apportioned liability between [Mr. Sebastianelli] (51%) and [Mr. Myers] (49%).  Neither party has challenged that finding by the jury through post-trial motions, and the failure to file any post-trial motions on the issue of liability has waived any argument or contest on that issue.  Accordingly, the [c]ourt will focus on facts attendant to the issue of damages.

On the first day of trial, November 27, 2018, the lawyers made opening statements to the jury.  When defense counsel opened to the jury, he stated as follows:

> You know, as I listened to counsel's opening, it occurred to me that [there] really aren't a lot of disputed facts about what occurred in this particular case, and the thought might come to you that if we're all agreeing on everything that happened, on the injuries, on the nature of the accident, why are we here?

_____

[1] Mr. Sebastianelli describes dunnage as "being comparable to landscaping timbers[,]" which he says "were placed onto the trailer floor in order to ensure that the product was able to be strapped and choked with the dunnage to prevent the load from moving or shifting while in transit."  Mr. Sebastianelli's Brief at 9-10 (citations omitted).  See also Mr. Myers's Brief at 2 ("The delivery included two … pipe bundles weighing approximately 3,135 pounds each which had been loaded onto dunnage consisting of eight … foot landscaping timbers.  Dunnage raises the pipe bundles sufficiently from the bed of the trailer so that a forklift can get under them for loading and unloading.") (citations omitted).

[N.T. Trial (Morning), 11/27/18, at 3].   Defense counsel went on in his opening statement to contest and challenge liability and negligence, but never made any argument with regard to the injuries.   Thereafter, testimony commenced, and the [c]ourt will summarize that testimony and evidence in the following paragraphs.

In addition to testimony by [Mr. Myers] regarding his injuries, [Mr. Myers] offered expert testimony by six individuals.   The [c]ourt will summarize the testimony of these witnesses in the following paragraphs, in chronological order in terms of treatment and/or other aspects of damages.

Dr. Peter Siska, an orthopedic surgeon, testified by videotape deposition.   Dr. Siska treated [Mr. Myers] for a left leg injury sustained in the work-related accident of March 13, 2014.   Dr. Siska diagnosed [Mr. Myers] with significant fractures of the tibia and fibula of his left leg.   Dr. Siska further testified that the x-rays of [Mr. Myers's] left leg and foot showed that his foot was in a totally different direction than his knee, with the foot pointing 90 degrees in the wrong direction.   Dr. Siska recommended surgery with the insertion of a metal rod and performed this surgery on March 13, 2014.

After the surgery, [Mr. Myers] developed compartment syndrome of the left leg that required emergency compartment release surgery, called a fasciotomy, which occurred on March 14, 2014. Also, in the aftermath of the surgery, [Mr. Myers] encountered much swelling in the leg and developed a condition known as chronic regional pain syndrome.   Dr. Siska prescribed physical therapy and even discussed an amputation of a portion of the leg with [Mr. Myers].

At a later point in time, Dr. Siska removed the metal rod to relieve some of the pain.   The doctor opined that [Mr. Myers's] prognosis is guarded and he has a permanent condition with regard to the leg.   Finally, on direct examination, Dr. Siska opined that [Mr. Myers] cannot return to work.

Defense counsel cross-examined Dr. Siska.   On cross-examination, Dr. Siska stated that [Mr. Myers's] injury involves a terrible fracture that is limb-threatening.   Dr. Siska did concede on cross-examination that he released [Mr. Myers] to return to work in a light-duty status.   On redirect, Dr. Siska stated that when he released [Mr. Myers] to return to work light-duty, [Mr. Myers] fell at work while going up a set of stairs.   Defense counsel

did not challenge Dr. Siska in cross-examination with regard to his diagnosis, treatment or the injuries.

Dr. James Russavage also testified by videotape deposition in [Mr. Myers's] case-in-chief. Dr. Russavage is the chief of reconstructive surgery at UPMC Presbyterian Hospital. Dr. Russavage treated [Mr. Myers] on March 17, 2014[,] for two open wounds after the compartment fasciotomies were performed. He performed a skin graft, grafting skin from the thigh to cover the wounds. He related the need for the skin graft and the wounds to the accident of March 13, 2014. He noted that the scar related to the skin graft is life-long.

[Mr. Myers] also presented the live testimony of Dr. John Wrightson, a specialist in physical medicine and rehabilitation at trial. Dr. Wrightson testified that he first evaluated [Mr. Myers] on October 27, 2014. At that initial encounter, [Mr. Myers] complained of injuries from the accident of March 13, 2014, including severe lower extremity pain, burning, stinging, pins and needles, numbness, tearing sensation and a very cold sensation in his toes. [Mr. Myers] also noted a shoulder injury. Dr. Wrightson noted that he was aware of the fact that [Mr. Myers] had sustained tibia and fibula fractures and compartment syndrome, which he defined as pressure within the fascia on the nerves and arteries that can result in loss of use of the limb if not relieved. The doctor characterized this as a serious condition.

Dr. Wrightson continued in his testimony by noting that upon examination, [Mr. Myers] showed a limited ability to move his ankle upward and could not push off of the ankle. This makes walking extremely difficult, and Dr. Wrightson confirmed the diagnosis of chronic pain syndrome. The doctor prescribed Gabapentin, an anti-convulsent medication for neuropathic pain (nerve related pain). He recommended a spinal cord stimulator for the purpose of stimulating the spine to relieve the pain. The doctor prescribed a number of medications for pain and compound creams to reduce the pain and swelling.

Dr. Wrightson further noted that [Mr. Myers] experienced a weight gain of 30 pounds, emotional problems in dealing with the pain and a foot drop due to a weak ankle resulting in the inability to move the foot upwards.

Dr. Wrightson diagnosed [Mr. Myers] with regional pain syndrome, which is a severe pain that inhibits an individual from using the limb in question. He rendered the following opinions:

(1) [Mr. Myers's] condition is permanent; (2) [Mr. Myers] has a poor prognosis for the future; and (3) [Mr. Myers] is unable to work as a truck driver. Like Dr. Siska, Dr. Wrightson did note that [Mr. Myers] was returned to work, light duty, in 2015 with the following restrictions: (1) not able to sit or stand more than 5-10 minutes; (2) a limitation of lifting only 5-10 lbs.; and (3) no lifting, twisting or climbing. Further, Dr. Wrightson conceded that [Mr. Myers] would not agree to a trial of a spinal cord stimulator or other type of stimulation. Defense counsel did not challenge Dr. Wrightson in cross-examination with regard to his diagnosis or treatment or the injuries.

[Mr. Myers] also offered the testimony of Dr. Glen Buterbaugh by videotape deposition. Dr. Buterbaugh is an orthopedic surgeon. Dr. Buterbaugh evaluated [Mr. Myers] on November 12, 2014[,] for a right shoulder injury, as a result of the accident of March 13, 2014, resulting in crepitation and popping of the shoulder. An MRI was performed, and Dr. Buterbaugh injected the shoulder with Lidocaine. He ultimately recommended surgery to the right shoulder. The surgery occurred, and Dr. Buterbaugh noted a rotator cuff tear and the need for a bicep transplant. After some follow-up treatment, [Mr. Myers] was discharged.

On cross-examination, Dr. Buterbaugh noted that he released [Mr. Myers] for full-duty work with regard to the shoulder only. Dr. Buterbaugh also noted that [Mr. Myers's] prognosis for the shoulder is good. Defense counsel did not challenge Dr. Buterbaugh on cross-examination with regard to his diagnosis, treatment or the injuries.

On re-direct examination, Dr. Buterbaugh noted that the return to work he issued was for the shoulder only and that he played no part in the treatment of the lower extremity injury.

The parties entered into a stipulation with regard to past medical bills. Exhibit "R" was admitted into evidence without objection, which stated that there were $530,039.82 in past medical bills. [Mr. Sebastianelli] stipulated to the amount as reasonably incurred medical bills, but did not stipulate to any factual cause

on the part of [Mr. Sebastianelli] with regard to these medical bills.[2]

[Mr. Myers] offered the testimony of Varsha Desai. Ms. Desai testified that she is a registered nurse and stated her qualifications to testify as an expert. Without objection, she was recognized as an expert in nursing, nurse life-care planning and projecting future medical costs. She further testified that she reviewed the records, interviewed [Mr. Myers,] and reviewed the medical bills. She checked and reviewed the Pennsylvania state costs for medical services, which she stated is customary in her field as a prerequisite to testimony.

[Ms.] Desai noted that [Mr. Myers] is age 47, suffers from a chronic condition, and has a 32.4 year life expectancy based upon government tables. [Ms.] Desai further testified that she reviewed all of the prescriptions that [Mr. Myers] has taken in the past and is presently taking, reviewed [Mr. Myers's] diagnoses and noted the recommendation of a spinal cord stimulator by several doctors. She also noted that an amputation may be a possible treatment and the need to state the cost projection for an amputation.

Based upon all of these factors and her review of the various documents, she projected the following:

1. The cost of pain medication to manage [Mr. Myers's] pain over his 32.4 year life expectancy will be $19,958;

2. A future medical cost projection in total over the 32.4 year life expectancy will be $890,772;

_____

[2] At trial, after Mr. Myers's counsel stated that the parties agreed that the amount of medical bills that Mr. Myers can recover for past medical treatment is $530,039.82, the trial court told the jury:

Okay. And ladies and gentlemen, I believe we discussed this on the record. The defense has stipulated that this amount of medical bills was reasonably incurred as a result of the treatment. [Mr. Sebastianelli] contests whether any conduct on the part of [Mr. Sebastianelli] caused these damages, but they do [sic] stipulate to the amount and the reasonableness of the fees.

N.T. Trial, 11/29/18, at 105.

3. The cost of a spinal stimulator over this life expectancy, including any potential replacement, will be between $92,291 to $95,291; and

4. The cost associated with an amputation will be $103,087.

Ms. Desai estimated that the total future medical costs for [Mr. Myers] over his life expectancy will be between $1,112,847 and $1,115,847. A chart was shown to the jury and admitted into evidence as Exhibit "T" regarding these figures.

In a brief cross-examination, defense counsel was successful in getting Ms. Desai to concede that [Mr. Myers] has rejected a stimulator and amputation to date, yet the amounts for both of these procedures were included in the projected costs. Ms. Desai also conceded that a spinal cord stimulator and amputation would not be done together and both may not be necessary.

Finally, with regard to experts, [Mr. Myers] offered the testimony of Dr. William Houston Reed, a vocational expert and forensic economist. He was qualified as an expert and recognized as such without objection by defense counsel.

Dr. Reed testified that he interviewed [Mr. Myers] on three occasions and reviewed certain documents. He noted that [Mr. Myers] was making $17.50 per hour at the time of the incident in question and earned $46,000 in 2013, the year before the accident. Based upon his experience as a vocational expert and forensic economist, Dr. Reed testified that employers would not accommodate [Mr. Myers's] limitations.[3]

_____

[3] Specifically, Dr. Reed stated:

An employer is not going to make the types of accommodations that [Mr. Myers] needs. In addition to soaking his foot, he has to lie down, has to elevate his leg above the waist as high as heart level. There is no jobs [sic] that an employer is going to let you lie down.

When I first spoke to him[,] I think he said four hours out of an eight hour day. That was back in 2015. Subsequently to that[,] after that[,] he told [me] it's five, six hours a day now. Nobody, nobody makes those kinds of accommodations for, for competitive

Dr. Reed then testified that [Mr. Myers] has sustained the following wage loss:

1. $205,102.00 in past lost wages;

2. $7,589.00 in past 401K proceeds;

3. Future lost earning capacity of $893,601;

4. Future fringe benefit loss of $107,232.

The total economic loss, past and future, noted by Dr. Reed was $1,213[,]524. A chart summarizing these figures was admitted into evidence without objection as Exhibit ["]S.["]

On cross-examination, Dr. Reed conceded that the projection of these figures is not an exact science. He also noted that [Mr. Myers] may undergo a medical procedure and return to work someday. Defense counsel did not otherwise challenge Dr. Reed's figures. The cross-examination took only [five] pages of the trial transcript.

[Mr. Sebastianelli] offered no expert testimony to challenge any of the expert testimony offered by [Mr. Myers]. The only evidence offered by the defense was the testimony of [Mr.] Sebastianelli dealing with the liability aspect of this case.

Closing arguments occurred on the last day of trial, December 3, 2018. In his closing argument, defense counsel stated the following:

> On March 13, 2014, Mr. Brad Myers suffered a very serious injury to his leg. There were complications afterwards that rendered his leg almost totally useless. You may have noticed that we did not bring any doctors in to counter that. That's because there was nothing to counter. We're not here to say, oh, he's faking it. All this is, it's nothing to be concerned with. We recognize that he had a serious injury, so we didn't want to waste your time or anybody else's time trying to say that it wasn't a serious injury.

_____

employment. There is no reason for them to hire you and pay you a wage.

N.T. Trial, 11/30/18, at 42-43.

But as you listened to the testimony regarding his damages and the evidence that he is permanently disabled, there also were bits and pieces from his own doctors who talked about that there were treatments that he could undergo that he had refused, spinal cord stimulation and the more serious one of amputation which could indeed remove this pain syndrome that he is experiencing which is disabling him in his mid[-]40s. While that is a decision that I would not want to make myself, ... I venture to guess that that would be a difficult decision for you to make.

His own doctor[,] Dr. Siska[,] at one point said in response to Brad Myers approaching him about possible amputation of his leg, the doctor said all of his patients are glad that they take that route because it does remove the pain, and it lets them live a much more normal life without that constant pain, the medication, and everything else that goes with it.

I don't need to point out to you that daily[,] we see soldiers coming back from overseas with missing limbs and para athletes who by utilizing the technology that we have today, it's amazing[, t]hey can replace limbs and live long, happy healthy, productive lives. Mr. Myers may no longer ever drive a truck again, but his skills, his education, the possibility of returning to school[,] can certainly translate into a very long and productive life if he wants to.

Now, I talked about damages because from the standpoint of [Mr. Myers] and [Mr. Sebastianelli], there's no secret what's going on here. If you could wave a magic wand and make Mr. Myers whole again you would do that, but we can't.

So our system says we reward or we compensate somebody with damages, and [Mr. Myers's counsel's] job is to maximum [sic] damages, to get as much money as possible. My job is to minimize damages, to try to keep those damages as low as possible. Hopefully the jury comes with a happy medium and does what is fair, not what they feel from sympathy, what they would like to give, or what they believe, if damages are awarded, what they actually believe would be fair.

Now, just because I talk about damages doesn't mean that I think that they should be awarded. In fact, the issue in this case is liability.

[N.T. Trial, 12/3/18, at 4-6]. In essence, defense counsel conceded a serious injury in his argument, argued some mitigating facts, and predicated an award of damages based upon a finding of no liability.

After closing arguments, the jury was instructed on the law and sent out to deliberate. On December 3, 2019, the jury found negligence and factual cause on the part of both parties and entered the following as the relevant part of the verdict for purposes of this post-trial motion:

Question 5:

Taking the combined negligence that was a factual cause of any harm to Bradley Myers as 100 percent, what percentage of that negligence do you attribute to Frank Sebastianelli, individually and as owner of and t/d/b/a Ameripride Fence Company and what percentage do you attribute to Bradley Myers.

Percentage of negligence attributable to Frank Sebastianelli, individually and as owner of and t/d/b/a Ameripride Fence Company

<u>51%</u>

Percentage of negligence attributable to Bradley Myers

<u>49%</u>

If you have found Bradley Myers'[s] percentage is 50 percent or less, go to Question 6.

If you have found Bradley Myers'[s] percentage is greater than 50 percent, he cannot recover and you should not answer any other questions. Please tell the court officer you have reached a verdict.

Question 6:

State the amount of damages, if any, sustained by Bradley Myers as a result of the accident, without regard to and without reduction by the percentage that you have attributed to the plaintiff.

- 11 -

|     |     |     |
| --- | --- | --- |
| (a) Past medical expenses | | <u>$0</u> |
| (b) Future medical expenses | | <u>$0</u> |
| (c) Past lost earnings | | <u>$0</u> |
| (d) Future lost earning capacity | | <u>$0</u> |
| (e) Past, present, and future pain and suffering, embarrassment and humiliation, and loss of enjoyment of life | | <u>$500,000</u> |
| (f) Disfigurement | | <u>$0</u> |
| | Total | <u>$500,000</u> |

[Verdict Slip, 12/3/18, at 2-3 (unnumbered pages)].[1]

> [1] The [c]ourt molded the verdict by Order of December 4, 2018[,] and awarded delay damages by Order of March 30, 2019.

> ... As stated above, [Mr. Myers] has filed a motion for post-trial relief, requesting a new trial on damages only[,] and [Mr. Sebastianelli] has filed no motion for post-trial relief.

Trial Court Opinion (TCO), 5/24/19, at 1-13 (internal citations omitted).

On May 24, 2019, with respect to Mr. Myers's post-trial motion requesting a new trial as to damages only, the trial court entered the following order:

> 1. [Mr. Myers's] request for a new trial on the issues of past medical expenses, future medical expenses, past lost earnings and future lost earning capacity is granted;

> 2. [Mr. Myers's] request for a new trial on the issues of past, present and future pain and suffering, embarrassment and humiliation, loss of enjoyment of life and disfigurement is denied; and

> 3. [Mr. Sebastianelli's] request for a new trial asserted in the Conclusion section of his brief in opposition to [Mr. Myers's]

motion for a new trial, but never timely raised in a motion of his own as required by Pa.R.[C].P. 227.1(c)[,] is denied as waived.

Trial Court Order, 5/24/19, at 1-2 (unnumbered pages).

On June 21, 2019, Mr. Sebastianelli filed a timely notice of appeal and, on June 26, 2019, Mr. Myers filed a timely notice of cross-appeal. See Pa.R.A.P. 903(b) ("[I]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was served, or within the time otherwise prescribed by this rule, whichever period last expires.").[4] The trial court subsequently directed the parties to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and they each timely did so.

We will address Mr. Sebastianelli's appeal first. Presently, he raises the following issues for our review:

> I. Whether the trial court erred in denying [Mr. Sebastianelli's] Motion for Summary Judgment in failing to find that [he] owed no duty to [Mr. Myers] where [Mr. Myers] was injured when a piece of dunnage unsecured to [Mr. Myers's] trailer kicked up when [Mr. Myers] unloaded material from his trailer by hand and where [Mr. Myers] had actual knowledge that the fork lift on site at [Mr. Sebastianelli's] business location was inoperable; and
>
> II. Whether the trial court erred in granting [Mr. Myers's] Motion for Post-Trial Relief and awarding [Mr. Myers] a new trial as to past and future medical expenses and past and future lost earnings and earning capacity; alternatively, whether in granting the new trial, the trial court erred in limiting the new trial to certain categories of [Mr. Myers's] damages instead of granting a new trial on all issues.

Mr. Sebastianelli's Brief at 6.

_____

[4] This Court sua sponte consolidated the parties' cross-appeals. See Order, 7/12/19.

- 13 -

Before delving into Mr. Sebastianelli's issues, we address our jurisdiction to consider this appeal. Mr. Sebastianelli has appealed pursuant to Pa.R.A.P. 311(a)(6), which allows an appeal to be taken as of right from an interlocutory order in a civil action awarding a new trial. See also Mirabel v. Morales, 57 A.3d 144, 149 n.6 (Pa. Super. 2012) (acknowledging that this Court "has jurisdiction to hear an appeal from an order granting a new trial limited solely to the issue of damages under Pa.R.A.P. 311(a)(6)") (citation omitted). However, because the trial court's order awarding a new trial to Mr. Myers on certain categories of damages is not a final order, this order "does not draw into question the propriety of [the other] non-final orders in the case." See Banohashim v. R.S. Enterprises, LLC, 77 A.3d 14, 27 n.6 (Pa. Super. 2013) (citation omitted; brackets in original); see also Adkins v. Johnson & Johnson, -- A.3d --, 2020 WL 1873995, at *1 (Pa. Super. filed April 15, 2020) (noting that the appellant "correctly recognizes the interlocutory nature of the order on appeal and that the only issue it can appeal is the award of the new trial on the issue of damages") (citation and footnote omitted). Accordingly, we have jurisdiction to consider Mr. Sebastianelli's issue relating to the award of a new trial to Mr. Myers on certain categories of damages, but do not have jurisdiction to review his issue involving the trial court's denying his motion for summary judgment. Further, the trial court's order denying Mr. Sebastianelli's motion for summary judgment does not independently implicate our jurisdiction, as it is not a final order disposing of all claims and of all parties (Pa.R.A.P. 341), and is not appealable as of right (Pa.R.A.P. 311),

by permission (Pa.R.A.P. 312), or as a collateral order (Pa.R.A.P. 313). See Banohashim, 77 A.3d at 27 n.6 (noting that we lacked the jurisdiction to entertain issues challenging the trial court's denial of a request for a compulsory nonsuit and denial of a motion in limine, where the appellant had appealed, as of right, from an interlocutory order granting a new trial to the opposing party). Thus, we are unable to evaluate Mr. Sebastianelli's first issue.

In Mr. Sebastianelli's second issue, he argues that the trial court erred in granting a new trial as to past and future medical expenses, and past and future lost earnings and earning capacity. See Mr. Sebastianelli's Brief at 6. We apply the following standard of review to such claims:

> The decision to grant a new trial on the grounds of inadequacy of damages is a matter within the trial court's discretion. We will not disturb the trial court's decision unless the court palpably abused its discretion or committed an error of law.
>
>> … As a general rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instruction of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some cases, where otherwise, there has been an evident failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more.
>
> A trial court may only grant a new trial when the jury's verdict is so contrary that it shocks one's sense of justice. A reversal based

- 15 -

on the inadequacy of a verdict is appropriate only where injustice of the verdict stands forth like a beacon. However, a new trial should not be granted due to a mere conflict in testimony or because the trial judge, on the same facts, would have arrived at a different conclusion.

Fischer v. Troiano, 768 A.2d 1126, 1129 (Pa. Super. 2001) (internal citations and quotation marks omitted).

Here, the trial court explained its reasoning for granting a new trial as to each of these categories of damages as follows:

Past Medical Expenses

[T]he parties stipulated to past medical expenses in the amount of $530,039.82. In fact, [Mr. Sebastianelli] even stipulated to the amount being reasonably incurred, but challenged whether this amount was factually caused by any negligence on the part of [Mr. Sebastianelli]. In its verdict, the jury specifically found that [Mr. Sebastianelli] was negligent and that his negligence was a factual cause of harm to [Mr. Myers]. [Mr. Sebastianelli] stipulated to the medical bills associated with the injuries and even stipulated to the fact that they were reasonably incurred, but yet the jury awarded $0 for past medical expenses. This issue was recently addressed by the Pennsylvania Superior Court in the case of Mader v. Duquesne Light Company, 199 A.3d 1258, 1264-65 (Pa. Super. 2018)[, appeal granted, 217 A.3d 193 (Pa. 2019)]. In addressing an award of past medical expenses by a jury in a similar situation, the Mader Court stated that "[t]his Court has explained that 'stipulations are binding upon the Court as well as on the parties agreeing to them.'" Id. at 1265.... As the Superior Court noted in Mader, "the parties' stipulation reveals that the $444,525.56 in medical expenses represented Mader's medical costs from the time of injury until trial." [Id.]. Upon reflection, the [c]ourt likely erred in not instructing the jury that if they find liability in favor of [Mr. Myers] by finding him 50% negligent or less, they must award the past medical expenses that were stipulated to.[2] There was absolutely no evidence to contradict the amount of past medical expenses and it is clearly uncontroverted. Accordingly, the failure to award the past medical expenses is offensive to the conscience and judgment of the [c]ourt, and the [c]ourt, therefore, determines that [Mr. Myers] is entitled to a new trial on past medical expenses.

- 16 -

² The [c]ourt did charge the jury that[,] "[i]f you find that [Mr. Sebastianelli's] negligence caused [Mr. Myers's] harm, [Mr. Myers] is entitled to be compensated for the amount of all medical expenses reasonably incurred for the diagnosis, treatment and cure of his injuries in the past that have occurred up to today." The [c]ourt also noted that the parties have stipulated to that amount and pointed out that [Mr. Sebastianelli's] only dispute is that any conduct on his part led to these injuries or the requirement for expenses.

Future Medical Expenses

[Mr. Myers] introduced evidence of an expert projecting his … future medical expenses at between $1,112,847 and $1,115,847. The defense offered no expert to attempt to offset this testimony. Defense counsel did cross-examine [Mr. Myers's] expert, raising issues such as [Mr. Myers's] rejection of a spinal cord stimulator and amputation to date and the fact that costs for those procedures were included in the projection. Defense counsel also raised the issue in cross-examination that the spinal cord stimulator and amputation should not be done together or would not both be necessary if one or the other was accepted.

[D]efense counsel's closing argument raised the same issues, namely that [Mr. Myers] has refused a spinal cord stimulator and amputation. In his closing argument, defense counsel went on to assert that if [Mr. Myers] had the amputation, he would go on to live a more normal life and that veterans come home from a war with a prosthesis and live productive lives.

While this argument serves to argue mitigation against future medical expenses, it does not eliminate them completely. Defense counsel argued to the jury that [Mr. Myers] should opt for either spinal cord stimulation or an amputation, which would certainly improve his situation and offset damages as a whole. This means that future medical expenses for either the spinal cord stimulator or amputation would be necessary. This does not translate into an award of zero dollars for future medical expenses. Therefore, a zero award "is offensive to the conscience and judgment of the [c]ourt[,]" and the [c]ourt grants a new trial on the issue of future medical expenses.³

³ The [c]ourt did instruct the jury that if they found that [Mr. Sebastianelli's] negligence caused [Mr. Myers's] injuries, [Mr. Myers] is entitled to be compensated for all medical

- 17 -

expenses that will be reasonably incurred in the future for the care and treatment of his continuing injuries.

Past Lost Earnings

[Mr. Myers] presented testimony by multiple expert treating physicians. These physicians presented evidence to establish that [Mr. Myers] sustained such severe fractures to his tibia and fibula that his foot was pointed in the wrong direction (at a 90 degree angle to his leg)[,] and he thereafter developed compartment syndrome, which needed a release, and that he suffers from chronic pain syndrome. The jury was provided with a past lost wage evaluation by an expert of $205,102. The defense offered no evidence to contradict the severity of the injury, and in his closing argument, defense counsel acknowledged that [Mr. Myers] "suffered a very serious injury to his leg." There was no evidence offered in contradiction to the past wage loss figure projected by [Mr. Myers's] expert. While defense counsel did argue that [Mr. Myers] has failed to mitigate his damages by not undergoing a spinal cord stimulation procedure or amputation, this certainly does not result in a zero award for past lost earnings. "A jury may not eliminate ... the loss of wages as the result of negligence which they, the jury, have adjudicated against the responsible defendant." Todd v. Bercini, ... 92 A.2d 538, 539 ([Pa.] 1952). Accordingly, [Mr. Myers] is entitled to a new trial on the issue of past lost earnings.

Future Lost Earning Capacity

[Mr. Myers] produced an expert on not only past lost wages, but also on future lost earning capacity. That expert projected [Mr. Myers's] future lost earning capacity, along with lost 401K and fringe benefits as the result of an inability to work. The expert specifically testified that [Mr. Myers] is "damaged goods[,"] and that employers will not accommodate his limitations based upon the expert's experience. [Mr. Sebastianelli] produced no expert testimony in opposition to the [Mr. Myers's] expert. The only issues raised by defense counsel on cross-examination of the expert were (1) that future lost earning capacity is not an exact science[,] and (2) that [Mr. Myers] may have a medical procedure performed and return to work in the future. These issues may go to possibly mitigate damages, but certainly do not reduce them to the zero figure that the jury awarded.

Relying upon Holton v. Gibson, ... 166 A.2d 4 ([Pa.] 1960), the Pennsylvania Superior Court, in Serhan v. Besteder, ... 500 A.2d

130, 134 ([Pa. Super.] 1985), stated that[,] "[w]ith respect to impairment of earning capacity, the law requires only proof that the injured person's economic horizons have been shortened as a result of the tortfeasor's negligence." "The [t]rue [t]est is whether or not there is a loss of earning power, and of ability to earn money." Mazi v. McAnlis, … 74 A.2d 108, 112 ([Pa.] 1950). The Serhan Court noted that a future loss of earning capacity must link the loss of earning capacity to the injuries in question. [Serhan], 500 A.2d at 134-35. Moreover, as the Pennsylvania Superior Court stated in Stultz v. Reese Brothers, Inc., 835 A.2d 754, 764 ([Pa. Super.] 2003):

> The burden of proving that a plaintiff failed to exercise reasonable diligence in seeking comparable or equivalent employment lies with the defendant. … To meet this burden, the … [adverse party] must demonstrate that substantially comparable work was available and the plaintiff failed to exercise reasonable due diligence in seeking alternative employment.

Here, [Mr. Myers] provided sufficient evidence to meet his burden of lost earning capacity. [Mr. Sebastianelli] did not meet his burden with regard to either comparable work that was available or [Mr. Myers's] failure to exercise reasonable due diligence in seeking alternative employment. Accordingly, it was error for the jury to award zero damages for lost earning capacity under these facts and circumstances, and [Mr. Myers] must be accorded a new trial on the issue of lost earning capacity.

TCO at 18-22 (some internal citations omitted and brackets added; headings modified).

Mr. Sebastianelli advances a myriad of arguments contesting the trial court's rationale in granting a new trial on these categories of damages. See Mr. Sebastianelli's Brief at 26-36. He argues that the jury's verdict was not inadequate, and insists that "[t]he verdict of $500,000 did indeed bear a relationship to the alleged loss." Id. at 27. He adds that the jury was free to disbelieve the testimony of Mr. Myers's experts, and maintains that Mr.

Myers's evidence of damages was not uncontroverted, as he purports to have challenged every aspect of them. See id. at 27-28, 32-36. Finally, he asserts that "[i]t is clear from the 51%-49% verdict that this jury had concerns about liability, and the damages award reflects a compromise due to those concerns." Id. at 28-29.

We discern no abuse of discretion or error of law by the trial court. The trial court carefully and reasonably explained why the verdict offended its conscience and how it bore no reasonable relation to the losses suffered by Mr. Myers. Further, we disagree with Mr. Sebastianelli that none of Mr. Myers's experts provided testimony that was uncontroverted, see id. at 35, as the trial court correctly acknowledged that, though Mr. Sebastianelli challenged the extent of Mr. Myers's damages at times, Mr. Sebastianelli did not claim that Mr. Myers suffered — or would suffer in the future — no damages.[5]

_____

[5] We find unconvincing Mr. Sebastianelli's attempts to demonstrate that he challenged "every aspect" of Mr. Myers's damages. See Mr. Sebastianelli's Brief at 32-36. For instance, Mr. Sebastianelli argues that:

> On cross-examination, [Ms. Desai's] projections [of future care] were challenged and found to be faulty, in that the projection included two treatments (spinal cord stimulator and amputation) that would not both be performed, and the projection included medications that might not be necessary should either one of the two included treatments have been performed. Given this inconsistency, it is possible that her testimony may have been disregarded entirely by the jury.

Mr. Sebastianelli's Brief at 34-35 (citation omitted). We are unpersuaded. As the trial court discerned, Mr. Sebastianelli's cross-examination elicited how

With respect to Mr. Sebastianelli's contention that the jury's verdict was a compromise verdict and should not be disturbed, we disagree, though we recognize that this is a murky area of the law. This Court has explained that "[a] compromise verdict is one where the jury, in doubt as to the defendant's

_____

Mr. Myers could mitigate his future medical expenses, but it did not suggest that there would be none. TCO at 20; N.T. Trial, 11/29/18, at 98-101. Further, we do not view defense counsel's cross-examination of Ms. Desai as destroying the factual underpinnings of her opinion, rendering all of her testimony controverted, as it was clear that Mr. Myers would require at least some future medical care. See Carroll v. Avallone, 939 A.2d 872, 875 (Pa. 2007) ("[I]f there is no argument or opposition on a particular point, the jury may not be free to disregard such information."); Kiser v. Schulte, 648 A.2d 1, 6 (Pa. 1994) ("Nor is this a case where the jury could completely discredit the testimony of [the expert] as even under the scrutiny of extensive cross-examination his calculations yielded a net economic loss figure of $232,400. Instead, in this case, the jury totally disregarded the only evidence presented on the question of damages and settled on a somewhat capricious and inadequate amount of $25,000. The jury verdict here simply does not bear any rational relationship to the uncontroverted testimony presented by [the expert].") (footnote omitted).

Similarly, Mr. Sebastianelli claims that he challenged Mr. Myers's income loss, and cites to various witnesses' testimony pertaining to Mr. Myers's ability to return to work and the possibility that his condition could improve. See Mr. Sebastianelli's Brief at 33-34, 35. However, even this argument concedes that Mr. Myers had been out of work for some time following his injury, during which time he presumably lost wages. Further, even if Mr. Myers's condition changed in some way in the future, whether through a spinal cord stimulator, amputation, or if his chronic pain syndrome improved on its own, Mr. Sebastianelli does not show us where he claimed at trial that Mr. Myers would suffer no loss of earning power in the future. Rather, Mr. Sebastianelli merely pointed out that Mr. Myers's expert's projections were based on Mr. Myers's never returning to the work force, and that Mr. Myers may "be able to return to some type of work" someday, though he did not propose in what capacity. See N.T. Trial, 11/30/18, at 54-55; see also Mr. Sebastianelli's Brief at 35. As the trial court observed, such arguments may "possibly mitigate damages, but certainly do not reduce them to the zero figure that the jury awarded." TCO at 21.

negligence or [the] plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would if these questions had been free from doubt." Fischer, 768 A.2d at 1131 (citation omitted).

Mr. Sebastianelli primarily relies on three cases to advance his argument that the jury's verdict was an acceptable compromise verdict and should not be disturbed. See Mr. Sebastianelli's Brief at 31-32; Mr. Sebastianelli's Reply Brief at 9-11. Given the nebulous nature of this area of the law, we will look at each closely.

First, Mr. Sebastianelli points us to Dawson v. Fowler, 558 A.2d 565 (Pa. Super. 1989), where a speeding motorcyclist collided with the defendant's vehicle while the defendant was backing her vehicle out of a driveway. Id. at 565-66. Because of the collision, the motorcyclist sustained foot and toe injuries, and sued the defendant to recover damages for lost wages, pain and suffering, and medical expenses. Id. at 566. At trial, the motorcyclist presented evidence of pain and suffering, $382.25 in medical bills, and $1,450 in lost wages. Id. The jury ultimately returned a verdict in favor of the motorcyclist for $382.25, along with a finding that each party had been 50% negligent. Id. The motorcyclist filed a motion for a new trial, on the basis that the jury's verdict did not account for lost wages and pain suffered, and the trial court denied it. Id.

On appeal, this Court noted that, "[w]here the trial court grants a new trial on the ground of inadequacy[,] the appellate courts will not interfere in the absence of a gross abuse of discretion: … When the trial court refuses

relief against an allegedly inadequate verdict[,] the appellate court will exercise even greater caution in reviewing its action." Id. (citations and emphasis omitted). This Court then explained:

> We have declared that seemingly low and unfair jury verdicts are nevertheless adequate when the jurors are presented with conflicting testimony on liability, contributory negligence, or degree of injury. Instantly, liability was contested. Moreover, regarding [the motorcyclist's] request for lost wages and pain suffered, our scrutiny of the record reflects that the degree of [the motorcyclist's] injury, and any resultant pain and suffering, were subject to question. Following the accident, [the motorcyclist] was treated for "some sort of fracture of the left great toe" and released, and subsequently experienced "uncomfortable pain in my heel and my lower left ankle...." At the time of the accident, [the motorcyclist] had been working in a temporary position for approximately two weeks. He returned to work after two weeks and did not miss any more time as a result of his injuries. The trial court aptly opined:
>
>> In the instant case, the issue of liability was vigorously contested. There was conflicting testimony between the parties. The jury was presented with inconsistent evidence and the amount of its award of damages reflects a compromise verdict. The granting of a new trial in this case limited to the issue of damages would amount to an abuse of discretion.
>
> We find that the trial court acted within its discretion in upholding the jury's verdict.

Id. at 567 (internal citations omitted). In addition, the Dawson Court rejected the motorcyclist's argument that compromise verdicts have no place in a comparative negligence system. Id.

Next, Mr. Sebastianelli directs us to Carlson v. Bubash, 639 A.2d 458 (Pa. Super. 1994). In Carlson, the plaintiff was waiting for his former girlfriend to return to her apartment. Id. at 459. She eventually returned,

accompanied by the defendant. Id. After she exited the defendant's car, the plaintiff approached the car's passenger-side window. Id. The parties exchanged words and the defendant accelerated his vehicle. Id. The plaintiff "either leaned or was pulled into [the defendant's] passenger window, became entangled therein, and eventually fell from the vehicle as it was moving[,]" suffering multiple injuries as a result. Id. The plaintiff subsequently filed a complaint, alleging that the defendant's negligence proximately caused his injuries, and the defendant denied liability. Id. At trial, the jury found both parties were causally negligent, with 55% causation assigned to the negligence of the defendant, and 45% to the plaintiff, and awarded damages of $7,500, which the trial court later molded. Id. The plaintiff filed a motion for a new trial, which the trial court denied.

On appeal, the plaintiff argued that the trial court erred in characterizing the jury's award as a permissible compromise verdict. Id. Looking to Dawson, this Court affirmed the trial court's order, stating:

> There would seem to be merit in the argument that once a jury has passed on comparative negligence (which impacts ... the amount of a verdict) that a further compromise in the amount of the verdict should be impermissible on the theory that any compromise has already taken place. Although Dawson did not give a rationale for its clear[-]cut holding to the contrary, we suggest that as to the present case one might go as follows: If a jury is being given the right to compromise a verdict, it should not be limited to a mathematical allocation of negligence components but should further extend to the award of reparations. That is, given the jury's power of compromise, it should not be judicially restricted short of irrationality. Thus, it would seem that, in a case such as this where the plaintiff's conduct was at least adventuresome, if not overtly confrontational, we would find it altogether appropriate and reasonable for the jury to exercise its

- 24 -

> power of compromise on the amount of the verdict as well as the comparative negligence determination.
>
> We, thus, conclude that there is no merit to [the plaintiff's] argument that the verdict in this case represents an impermissible compromise.

Id. at 461 (emphasis in original).

Last, Mr. Sebastianelli draws our attention to Kindermann v. Cunningham, 110 A.3d 191 (Pa. Super. 2015). In that case, the plaintiff and the defendant were fishing on the defendant's boat when the boat encountered the wake of a large ship. Id. at 192. The defendant shouted "[h]old on," and the plaintiff, who had been sitting on a storage box affixed to the deck, was thrust into the air and landed on the deck, suffering two broken bones in his right ankle. Id. Thereafter, the plaintiff brought a negligence action against the defendant. Id. Liability was "hotly contested[,]" as "[w]hether [the defendant] was negligent in his operation of the boat or in failing to warn [the plaintiff] of the impending wake, and whether [the plaintiff] was contributorily negligent in his choice of seat or failure to grasp the handrail, presented difficult issues based on the conflicting evidence presented." Id. at 192, 195. At trial, the parties stipulated that the plaintiff's medical bills amounted to $28,541.15, and his lost wages totaled $8,872.50. Id. at 192. A jury subsequently returned a $10,000 verdict, which the trial court molded to $5,000, due to the jury's determination that each party was 50% negligent. Id. The plaintiff filed a motion for a new trial limited to damages only, contending that the damages were contrary to the undisputed evidence, which the trial court denied. Id.

On appeal, this Court observed:

The trial court characterized this as "a close case[,]" one which arose out of an accident involving [a] mix of family, friends and acquaintances who were out fishing on a recreational boat on a clear, otherwise uneventful day and in which no other passenger on the boat claimed either injury or fear of injury. Although the award was "low enough to raise an eyebrow," the court did not find it shocking. Furthermore, it bore some relationship to the evidence, and the award did not defy "common sense or logic." The court concluded that liability had been fairly determined and that the $10,000 verdict was a compromise verdict that should not be disturbed on appeal.

Id. at 193 (citations to trial court opinion and quotation mark omitted; emphasis added). Thus, this Court affirmed the trial court's refusal to grant a new trial, stating that "[t]he trial court concluded that the jury in this case compromised its verdict, a finding that is amply supported by the record, and we defer to the trial court's assessment." Id. at 195.

In contrast to the authority proffered by Mr. Sebastianelli, Mr. Myers encourages us to rely on Fischer, supra. In Fischer, the plaintiff fell when she missed a single step leading into the defendants' sunken living room, and consequently suffered a compression fracture of one of her thoracic vertebrae. Id. at 1128. After the plaintiff initiated a civil action against the defendants sounding in negligence, the defendants denied liability for her fall and stated that the plaintiff's injures were the result of her own contributory negligence. Id. Following a jury trial, the jury attributed 60% of the causal negligence to the defendants and 40% of the causal negligence to the plaintiff, and awarded the plaintiff $24,588.73 for her medical expenses, which the trial court subsequently molded. Id. The plaintiff filed a motion for a new trial on

damages only, claiming that she was "entitled to an award of non-economic damages since the evidence admitted at trial established [she] suffered injuries which were of the type that normally cause pain and suffering." Id. The trial court granted the plaintiff's motion, and the defendants appealed. Id.

On appeal, the defendants argued that the award signaled a compromise verdict that the court should not disturb. Id. at 1131. This Court rejected that argument, stating:

> We do not find the jury reached a compromise verdict here, but instead ignored the medical evidence presented which supported [that the plaintiff] suffered from an objective injury which produced a compensable pain from a known medical source. There is no dispute here that [the plaintiff] suffered a compression fracture of the T–11 vertebrae as a result of the fall. There is also no dispute she was hospitalized as a result of her injury and the healing process would require at least a three-month healing period. We further find the jury disregarded the trial court's instruction requiring them to compensate [the plaintiff] for her pain and suffering, loss of enjoyment of life and humiliation if they found the [defendants] liable. Therefore, in situations such as this, when a jury awards damages for medical expenses, it must also award some damages for pain and suffering which would naturally accompany the injury.

Id. at 1131-32. Consequently, this Court affirmed the trial court's granting a new trial on damages only.

Based on our review of the relevant case law, two points strike us. First, these cases illustrate the discretion held by the trial court in granting a new trial, and the deference we show to the trial court's exercise of that discretion by way of our standard of review. In all four cases, this Court affirmed the trial court's decision to either grant or deny a new trial, though we recognize

this is not always the result in such matters. Dawson, 558 A.2d at 566 ("Where the trial court grants a new trial on the ground of inadequacy[,] the appellate courts will not interfere in the absence of a gross abuse of discretion: ... When the trial court refuses relief against an allegedly inadequate verdict[,] the appellate court will exercise even greater caution in reviewing its action.") (citations and emphasis omitted); see also Kindermann, 110 A.3d at 195 ("[W]e defer to the trial court's assessment."). Second, we note that in Kindermann, Carlson, and Dawson, in which we affirmed the trial court's denial of a new trial, the trial court had characterized the jury's verdict as a compromise verdict. See Kindermann, 110 A.3d at 195 ("The trial court concluded that the jury in this case compromised its verdict...."); Carlson, 639 A.2d at 459 ("[The a]ppellant first contends that he is entitled to a new trial because the court erred in characterizing the jury's award as a permissible compromise verdict."); Dawson, 558 A.2d at 567 (noting that the trial court had opined that "[t]he jury was presented with inconsistent evidence and the amount of its award of damages reflects a compromise verdict").

Here, the trial court did not characterize the jury's verdict as a compromise verdict, but instead detailed the ways in which the verdict did not relate to the evidence produced at trial and offended its conscience. Like in Fischer, the trial court in the case sub judice determined that the jury ignored the uncontroverted evidence of Mr. Myers's damages. It consequently concluded that Mr. Myers was entitled to a new trial as to past and future medical expenses, and past and future lost earnings and earning

capacity. Under our deferential standard of review, Mr. Sebastianelli has not convinced us that the trial court grossly abused its discretion in granting a new trial in this regard. As such, we will not interfere with the trial court's determination on the basis that the jury's verdict represented a permissible compromise verdict.

In the event of a new trial, Mr. Sebastianelli alternatively contends that the trial court erred and abused its discretion in limiting the new trial to damages only. He argues that "the issues of liability and damages are so intertwined that any new trial as to damages alone is an abuse of discretion." Mr. Sebastianelli's Brief at 36 (unnecessary capitalization and emphasis omitted). Mr. Sebastianelli points out that "[l]iability was vigorously contested at trial, and was a difficult issue for the jury, as is reflected by the jury's verdict, attributing 51% of the negligence to [Mr.] Sebastianelli, and 49% of the negligence to [Mr. Myers]." Id. at 37. He insists that, "[w]here a substantial conflict exists on the question of liability such that a low verdict might indicate a compromise, it is not only an appropriate compromise verdict, but it is also an abuse of discretion to grant a new [trial] solely as to damages." Id.

At the outset, we decline to find that Mr. Sebastianelli has waived this issue by failing to file a post-trial motion. See TCO at 24 (deeming this issue waived because Mr. Sebastianelli did not file a post-trial motion seeking a new trial on liability). As Mr. Sebastianelli astutely observes, no waiver was found in Fischer, supra, where the defendants raised in their response to the

plaintiff's post-trial motion requesting a new trial on damages that, if a new trial was warranted, it should be granted as to all issues, including liability. Id. at 1128. Here, Mr. Sebastianelli similarly argued in response to Mr. Myers's post-trial motion that, if the trial court were to grant Mr. Myers a new trial, it should not be limited to damages, but include liability as well. See Response to Mr. Myers's Post-Trial Motion, 12/24/18, at ¶ 25; Brief in Opposition to Mr. Myers's Post-Trial Motion, 3/6/19, at 5 ("[I]n the event the [c]ourt deems it necessary to award a new trial, the new trial should be based on a redetermination of liability and damages and not damages alone.") (unnumbered pages). Thus, we do not deem this issue waived.

Turning to the merits of this issue, our Supreme Court has explained that "[a] new trial limited to the issue of damages will be granted where: (1) the issue of damages is not 'intertwined' with the issue of liability; and (2) where the issue of liability has been 'fairly determined' or is 'free from doubt.'" Kiser, 648 A.2d at 8 (citations omitted). Mr. Sebastianelli argues that, because the jury's verdict was a compromise verdict, neither requirement has been met. See Mr. Sebastianelli's Brief at 40. However, we have already rejected Mr. Sebastianelli's argument that the jury's verdict was a compromise verdict, which undermines his argument that the issues of liability and damages are intertwined here and cannot be separated. Further, Mr. Sebastianelli had a fair opportunity to litigate the issue of liability, and the jury reached a fair resolution with respect to that issue. See Kiser, 648 A.2d at 8 (remanding the case for a new trial on the issue of damages alone where the

appellants "had a fair opportunity to litigate the issues of negligence and contributory negligence and the jury found against them and apportioned the damages accordingly[,]" and "[i]t would be unfair to the [appellees] to force them to re-litigate these issues in order to obtain the full extent of damages for themselves and the decedent's estate after liability had been so clearly determined by the jury"); Banohashim, 77 A.3d at 23 ("We have held that liability is 'fairly determined' when 'the court is convinced upon a review of the whole case that the jury [has] settled the issue as to responsibility fairly and upon sufficient evidence—so that dissociated from the other questions it ought to stand as the final adjudication of the rights of the parties.") (citations omitted); Nykiel v. Heyl, 838 A.2d 808, 812 (Pa. Super. 2003) (limiting new trial to damages where liability was fairly litigated, the jury fairly found that the appellee and minor-plaintiff were equally responsible for the accident, and the minor-plaintiff's injuries did not bear upon the issue of responsibility for the accident); Fischer, 768 A.2d at 1132 ("Although liability was contested, the jury clearly apportioned liability finding [the defendants] 60% causally negligent and [the plaintiff] 40% causally negligent. Since both parties were given a fair opportunity to litigate the issue of liability at trial, we find liability has been conclusively determined and need not be re-litigated."). As Mr. Myers recognizes, Mr. Sebastianelli did not raise any "trial error to suggest [that] anything other than a fair determination of liability has been made...." Mr. Myers's Brief at 38. Accordingly, the trial court did not err or abuse its discretion in limiting the new trial to damages only.

Finally, Mr. Sebastianelli claims that the trial court should not have granted a new trial as to only certain categories of damages. He asserts that, "[i]f issues of liability and damages can be so intertwined as to preclude granting a new trial solely on damages, surely issues of damages are without question so intertwined as to preclude a new trial on some categories of damages and not others." Mr. Sebastianelli's Brief at 41. He says that "[i]t is beyond doubt that this jury's award of $500,000 for pain and suffering is so intertwined with its decisions regarding lost earnings or medical expenses, that awarding a new trial as to some categories of damages and not all categories is an injustice to [Mr. Sebastianelli]." Id. As such, he states that "awarding a new trial as to lost earnings and medical expenses, but keeping the verdict as to pain and suffering, would be unjust." Id.

Mr. Myers does not oppose having a new trial with respect to all damages, including pain and suffering. See Mr. Myers's Brief at 39 n.1 ("While it is clear for the reasons stated herein that a new trial on damages only and not liability is appropriate, [Mr.] Myers takes no position on the award of some but not all damages…, i.e.…[,] whether the pain and suffering award should also be subject to a new trial."). Because Mr. Myers proffers no objection to the new trial including all categories of damages, we vacate the trial court's order awarding him a new trial on the issues of past medical expenses, future

medical expenses, past lost earnings, and future lost earning capacity, and remand for a new trial as to all categories of damages.[6]

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/21/2020

_____

[6] Because of our disposition, we need not address Mr. Myers's cross-appeal, in which he raised that the trial court erred in denying him a new trial on the issue of disfigurement damages.  See Mr. Myers's Brief at 39-41.